UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------- x
                                                        :
                                                        :
                                                        :
IN THE MATTER OF THE APPLICATION OF  :        Miscellaneous Action No. _____
WP COMPANY LLC d/b/a THE                     :
WASHINGTON POST FOR ACCESS TO         :        ORAL HEARING REQUESTED
CERTAIN SEALED COURT RECORDS           :
                                                        :
                                                        :
------------------------------------------------------- x

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PUBLIC ACCESS
<u>TO CERTAIN SEALED COURT RECORDS</u>**

Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 1048522;
admission to this Court pending)

DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, D.C. 20006
Tel: (202) 973-4200
Fax:  (202) 973-4499
Email:  laurahandman@dwt.com
Email:  ericfeder@dwt.com

*Attorneys for Petitioner WP Company d/b/a
The Washington Post*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 4

    I.     UNDER THE FIRST AMENDMENT AND COMMON LAW, THE COURT SHOULD UNSEAL ANY MATERIAL WHERE THE PARTIES HAVE NOT SHOWN SUFFICIENT REASONS TO KEEP THE MATERIAL SECRET ............................................................................................. 4

        A.     The First Amendment Requires that the Court Documents Be Unsealed to the Greatest Extent Possible ..................................................... 5

               1.     The First Amendment Confers a Presumptive Right of Public Access to Criminal Proceedings and Related Court Filings ........... 5

               2.     The Government Cannot Show a Compelling Reason to Seal Information Once an Ongoing Investigation Is Complete or the Information Otherwise Becomes Publicly Known ................... 9

        B.     The Public Also Has a Presumptive Right to Access Court Documents Under the Common law .......................................................................... 12

    II.     THE COURT SHOULD IMPLEMENT A REASONABLE PROCEDURE TO RE-ASSESS THE NEED FOR CONTINUED SEALING AS CIRCUMSTANCES CHANGE GOING FORWARD ....................................... 14

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Cobell v. Norton,*
  157 F. Supp. 2d 82 (D.D.C. 2001) ..........................................................................................7

*EEOC v. Nat'l Children's Ctr., Inc.,*
  98 F.3d 1406 (D.C. Cir. 1996) ..............................................................................................13

*Globe Newspaper Co. v. Superior Court for Norfolk Cty.,*
  457 U.S. 596 (1982)..............................................................................................................2, 9

*Greatness v. Fed. Election Comm'n,*
  831 F.3d 500 (D.C. Cir. 2016) ..............................................................................................15

*Grove Fresh Distribs., Inc. v. Everfresh Juice Co.,*
  24 F.3d 893 (7th Cir. 1994) ...............................................................................................4, 14

*In re Application of New York Times Co. for Access to Certain Sealed Court Records,*
  585 F. Supp. 2d 83 (D.D.C. 2008) ....................................................................................7, 14

*In re Fort Totten Metrorail Cases,*
  960 F. Supp. 2d 2 (D.D.C. 2013) ...........................................................................................8

*In re Grand Jury Subpoena, Judith Miller,*
  438 F.3d 1138 (D.C. Cir. 2006) .............................................................................................11

*In re Guantanamo Bay Detainee Litig.,*
  624 F. Supp. 2d 27 (D.D.C. 2009) ......................................................................................7, 8

*In re North,*
  16 F.3d 1234 (D.C. Cir. 1994) ...............................................................................................11

*In re Special Proceedings,*
  842 F. Supp. 2d 232 (D.D.C. 2012) ............................................................................... *passim*

*In re Time Inc.,*
  182 F.3d 270 (4th Cir. 1999) ...............................................................................................5, 6

*In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D),*
  707 F.3d 283 (4th Cir. 2013) ...................................................................................................8

*Lugosch v. Pyramid Co. of Onondaga,*
  435 F.3d 110 (2d Cir. 2006)...............................................................................................4, 15

*Matter of the Application of WP Co. LLC*,
   No. CV 16-MC-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016)..................................7

*Metlife, Inc. v. Fin. Stability Oversight Council*,
   865 F.3d 661 (D.C. Cir. 2017) ...................................................................................2, 12, 13

*Monitor Patriot Co. v. Roy*,
   401 U.S. 265 (1971).......................................................................................................8

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978)...................................................................................................2, 12

*Press-Enter. Co. v. Superior Court of California, Riverside Cty.*,
   464 U.S. 501 (1984)............................................................................................2, 5, 9, 12

*Press-Enter. Co. v. Superior Court of California for Riverside Cty.*,
   478 U.S. 1 (1986)...........................................................................................................5

*Richmond Newspapers, Inc. v. Virginia*,
   448 U.S. 555 (1980)......................................................................................................5

*United States v. Alcantara*,
   396 F.3d 189 (2d Cir. 2005)...........................................................................................6

*United States v. Brackett*,
   567 F.2d 501 (D.C. Cir. 1977) .......................................................................................6

*United States v. Dare*,
   568 F. Supp. 2d 242 (N.D.N.Y. 2008).............................................................................6

*United States v. El-Sayegh*,
   131 F.3d 158 (D.C. Cir. 1997) .....................................................................................12

*United States v. Harris*,
   204 F. Supp. 3d 10 (D.D.C. 2016) ...............................................................................6, 7

*United States v. Hubbard*,
   650 F.2d 293 (D.C. Cir. 1980) .....................................................................................13

*United States v. King*,
   No. 10 CR 122 (JGK), 2012 WL 2196674 (S.D.N.Y. June 15, 2012) ....................................6

*United States v. Kravetz*,
   706 F.3d 47 (1st Cir. 2013)..........................................................................................12

*United States v. Rivera*,
   682 F.3d 1223 (9th Cir. 2012) ......................................................................................6

*United States v. Thompson*,
   199 F. Supp. 3d 3 (D.D.C. 2016) ...........................................................................6

*United States v. Thompson*,
   713 F.3d 388 (8th Cir. 2013) ................................................................................6

*United States v. Webb*,
   No. CRIM.A. 94-0245 SS, 1998 WL 93052 (D.D.C. Feb. 20, 1998) ......................6

*Washington Post v. Robinson*,
   935 F.2d 282 (D.C. Cir. 1991) ...................................................................... *passim*

## Rules

Federal Rules of Criminal Procedure Rule 6(e) ....................................................10, 11

## Regulations

28 C.F.R. § 50.9 .............................................................................................14

## Other Authorities

Carol D. Leonig, et al., *Mueller seeks no prison time for former national security
   adviser Michael Flynn, citing his 'substantial assistance'*, Wash. Post (Dec. 4,
   2018) ................................................................................................................2

Carol D. Leonig, *Federal judge seeks documents related to Michael Flynn's
   January 2017 interview with FBI agents*, Wash. Post (Dec. 12, 2018) ...................2

Spencer S. Hsu, et al., *Michael Flynn's sentencing delayed after judge tells the
   ex-Trump adviser he might not avoid prison time*, Wash. Post (Dec. 18, 2018) .......2

## PRELIMINARY STATEMENT

Through this application, WP Company LLC d/b/a The Washington Post (the "Post")

seeks access to certain sealed court records—including sentencing memoranda, addenda and

exhibits thereto—in the criminal case captioned *United States v. Michael T. Flynn.*, Criminal

Action No. 17-cr-232 (EGS).  In particular, the Post seeks the unsealing of the unredacted

versions of the documents filed under seal at docket numbers 48-1, 48-2, 49-1 and 51-1

(collectively, the "Court Documents"), some of which were filed in heavily redacted form on the

public docket.

In allowing the Court Documents to be filed under seal (and filed publicly only in

redacted form), the Court repeatedly acknowledged that "[t]here is a strong presumption in favor

of public access to judicial records."  *See* Minute Orders, dated Dec. 12, 2018 and Dec. 17, 2018

(citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  Indeed, even if this were a

minor, run-of-the-mill drug-possession prosecution, and not a case with significant political and

national security implications, there can be no dispute that the public would have a presumptive

right to see the Court Documents under the First Amendment.  As the D.C. Circuit has held, the

First Amendment "guarantees the press and the public a general right of access to court

proceedings and court documents unless there are compelling reasons demonstrating why it

cannot be observed."  *Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991); *see*

*also In re Special Proceedings*, 842 F. Supp. 2d 232, 239 (D.D.C. 2012) (Sullivan, J.)

(explaining that First Amendment right of access applies to criminal trials, proceedings and

filings) (collecting cases).  As the Supreme Court has explained, "[t]he presumption of openness

may be overcome only by an overriding interest based on findings that closure is essential to

preserve higher values and is narrowly tailored to serve that interest," and "[t]he interest is to be

articulated along with findings specific enough that a reviewing court can determine whether the

closure order was properly entered." *Press-Enter. Co. v. Superior Court of California, Riverside Cty.* ("*Press-Enterprise I*"), 464 U.S. 501, 510 (1984).  In addition, the Court Documents are subject to the common law right to "inspect and copy public records and documents, including judicial records and documents," *Nixon*, 435 U.S. at 597, 602, which can be denied only where, "weighing the interests advanced by the parties in light of the public interest and the duty of the courts," the court determines that "justice … requires" denial of access.  *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665–66 (D.C. Cir. 2017) (citation omitted).

Of course, the fact that this case—and the work of the Office of Special Counsel ("OSC") in general—has been the focus of enormous public scrutiny only enhances the First Amendment interests at stake.[1]  "Underlying the First Amendment right of access to criminal trials is the common understanding that a major purpose of that Amendment was to protect the free discussion of governmental affairs."  *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 604 (1982) (citation and quotation marks omitted).  As the Supreme Court has explained, "[o]penness … enhance[s] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."  *Press-Enterprise I*, 464 U.S. at 508.  When the criminal defendant is the former National Security Advisor (and a three-star general); the charges are brought in the course of a Special Counsel investigation into the integrity of the presidential election; and the administration relentlessly attacks the validity of the

---

[1] *See, e.g.*, Spencer S. Hsu, et al., *Michael Flynn's sentencing delayed after judge tells the ex-Trump adviser he might not avoid prison time*, Wash. Post (Dec. 18, 2018), https://wapo.st/2EtK84T; Carol D. Leonig, *Federal judge seeks documents related to Michael Flynn's January 2017 interview with FBI agents*, Wash. Post (Dec. 12, 2018), https://wapo.st/2G8UycG; Carol D. Leonig, et al., *Mueller seeks no prison time for former national security adviser Michael Flynn, citing his 'substantial assistance'*, Wash. Post (Dec. 4, 2018), https://wapo.st/2G8UycG.

investigation itself, the potential for public skepticism of the fairness of the proceedings is high

(at least in some quarters), making transparency all the more critical.

The public interest in the contents of the Court Documents is also even more acute in

light of the closure of the OSC's investigation last month.  Based on statements in the publicly

filed documents in this case, the Court Documents provide details of the "substantial assistance"

that General Flynn provided in connection with "several ongoing investigations."  ECF No. 46-1

at 1.  Now that the OSC investigation is complete, the public has an especially strong interest in

understanding exactly what information General Flynn provided, and how that information

ultimately fit into the OSC investigation.

Lastly, the circumstances underlying this case continue to evolve quickly.  The

purportedly compelling reasons to seal information that may have existed at the time a document

was filed may no longer be present today or tomorrow.  When the Government filed its

sentencing memorandum under seal, it stated it was filing additional documents under seal

because the documents "include[] sensitive information about ongoing investigations."  ECF No.

46 at 2.  However, at least one of those investigations—the OSC investigation—is no longer

"ongoing."  Moreover, in the Joint Status Report submitted to the Court on March 12, 2019, the

Government stated that, while General Flynn may still testify in a separate criminal case

proceeding in the Eastern District of Virginia, "in the government's view his cooperation is

otherwise complete."  ECF No. 71 at 2.  Thus, the need for continued sealing may no longer be

present.  At a minimum, therefore, the Government should be required to show cause why the

documents must still nevertheless be withheld from the public.

Moreover, even if compelling reasons still justify keeping some or all of the documents

in this case under seal right now, the Post respectfully requests that the Court implement a

procedure going forward requiring the parties to regularly re-assess whether those compelling reasons have dissipated, and, if so, to promptly facilitate the unsealing of that material.  For example, if sealed information becomes available to the public by other means, the reasons that originally underlie the sealing may no longer be sufficiently compelling to justify further denial of access.

The D.C. Circuit has recognized "the critical importance of *contemporaneous* access to plea agreements to the public's role as overseer of the criminal justice process."  *Robinson*, 935 F.2d at 287.  And other circuits have likewise "emphasize[d] the importance of immediate access where a right to access is found."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126–27 (2d Cir. 2006) (collecting cases).  As the Seventh Circuit noted in embracing this principle, "[t]he newsworthiness of a particular story is often fleeting.  To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression."  *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994).  Given the fast-moving nature of these politically charged proceedings, the Court should ensure that information is not kept from the public any longer than absolutely necessary.

## ARGUMENT

## I.  UNDER THE FIRST AMENDMENT AND COMMON LAW, THE COURT SHOULD UNSEAL ANY MATERIAL WHERE THE PARTIES HAVE NOT SHOWN SUFFICIENT REASONS TO KEEP THE MATERIAL SECRET

Under well settled law, the public has a presumptive right of access to the Court Documents under both the First Amendment and the common law.  Any party seeking sealing must therefore meet both tests to justify any curbing of those rights.  To the extent the parties have not done so, the Court should order the material unsealed.  And if the Court determines that sealing any information is, indeed, narrowly tailored to serve a compelling interest, the Court

must make specific findings on the record to justify that determination.  *See Press-Enterprise I*, 464 U.S. at 510; *Robinson*, 935 F.2d at 288.

> A.      **The First Amendment Requires that the Court Documents Be Unsealed to the Greatest Extent Possible**
>
>> 1.      **The First Amendment Confers a Presumptive Right of Public Access to Criminal Proceedings and Related Court Filings**

The Supreme Court has long held that the First Amendment provides a qualified right of public access to criminal trial proceedings because such proceedings "have historically been open to the press and general public" and "public access plays a significant positive role in the functioning of" those proceedings.  *Press-Enter. Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 8-9 (1986) (applying what courts refer to as the "experience" and "logic" test).  As the Supreme Court has explained, this unbroken tradition of public access "is no quirk of history; rather, it has long been recognized as an indispensible attribute of an Anglo-American trial"; indeed, "a presumption of openness inheres in the very nature of a criminal trial under our system of justice."  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569, 573 (1980).

Based on these principles, courts—including this Court—have consistently held that the First Amendment right of access "is not limited to the criminal trial itself, but extends to many pre- and post-trial documents and proceedings," including preliminary hearings, *voir dire* proceedings, briefs, and search warrant documents.  *In re Special Proceedings*, 842 F. Supp. 2d at 239 (collecting cases); *see also In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999) ("A First Amendment right of access applies to a criminal trial, including documents submitted in the course of a trial. This right of access also applies to plea and sentencing hearings and to documents filed in connection with such hearings.").  In particular, courts have consistently held that the First Amendment right of access to criminal trials extends to sentencing proceedings and

"materials submitted to the Court in connection with sentencing that the Court is asked to consider." *United States v. King*, No. 10 CR 122 (JGK), 2012 WL 2196674, at *1 (S.D.N.Y. June 15, 2012) (citing *United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005) ("[A] qualified First Amendment right of public access attaches to sentencing proceedings.")). *See United States v. Harris*, 204 F. Supp. 3d 10, 15 (D.D.C. 2016) (finding First Amendment right of access to sentencing memoranda); *United States v. Thompson*, 199 F. Supp. 3d 3, 9 (D.D.C. 2016) (same); *see also United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012) ("[T]he First Amendment right of access applies to sentencing proceedings."); *Time Inc.*, 182 F.3d at 271; *United States v. Dare,* 568 F. Supp. 2d 242, 244 (N.D.N.Y. 2008) ("[T]he public has a strong right to sentencing memoranda under the First Amendment.") (collecting cases).

This consistent precedent makes sense under the Supreme Court's "experience" and "logic" test for the First Amendment right of access.  Courts have observed that "[s]entencing hearings have … historically been open to the public," *United States v. Thompson*, 713 F.3d 388, 393 (8th Cir. 2013) (collecting cases), and "the [public's] attendance is important to the proper functioning of the judicial proceedings." *Alcantara*, 396 F.3d at 198–99.  Pronouncing a sentence on a criminal defendant—especially one of imprisonment—is undoubtedly one of the most "awesome responsibilit[ies]" of the judiciary. *United States v. Brackett*, 567 F.2d 501, 505 (D.C. Cir. 1977); *see also United States v. Webb*, No. CRIM.A. 94-0245 SS, 1998 WL 93052, at *1 (D.D.C. Feb. 20, 1998) ("This Court's most important judicial function is the sentencing of individuals. Where a person's liberty is at stake, the powers of a trial judge are awesome.").  And this Court has noted the D.C. Circuit's observation that "First Amendment access to criminal proceedings 'serves an important function of monitoring prosecutorial or judicial misconduct.'" *In re Special Proceedings*, 842 F. Supp. 2d at 235 (quoting *Robinson*, 935 F.2d at 288).

Nowhere is that oversight function more critical than when the court is deciding whether and for

how long an individual will be deprived of his or her right to liberty.  As Judge Kollar-Kotelly

explained, quoting the First Circuit,

> public access to sentencing memoranda permits public oversight at
> sentencing and serves to "check any temptation that might be felt
> by either the prosecutor or the court ... to seek or impose an
> arbitrary or disproportionate sentence; promote accurate fact-
> finding; and in general stimulate public confidence in the criminal
> justice system by permitting members of the public to observe that
> the defendant is justly sentenced."

*Harris*, 204 F. Supp. 3d at 15 (quoting *United States v. Kravetz*, 706 F.3d 47, 57 (1st Cir. 2013))

(internal quotation marks omitted).

The need for full public understanding of the judicial process is all the more acute in a

high-profile and politically significant case like this one.  Accordingly, courts in this Circuit have

not hesitated to order disclosure of (or deny motions to seal) court documents in a variety of

situations.  For example, this Court ordered the unsealing of a report by the court-appointed

investigator on allegations of prosecutorial misconduct in the criminal prosecution of U.S.

Senator Ted Stevens, which had "received nearly unprecedented media coverage," *In re Special

Proceedings*, 842 F. Supp. 2d at 240.  Other courts in this Circuit have ordered unsealed:

- search warrant materials from the then-completed investigation into the anthrax mail
  attacks of 2001, which, the Court noted, was "one of the most complex, time-consuming,
  and expensive investigations in recent history," *In re Application of New York Times Co.
  for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 92–93 (D.D.C. 2008);

- the factual returns in habeas petitions for Guantanamo Bay detainees, *see In re
  Guantanamo Bay Detainee Litig.*, 624 F. Supp. 2d 27, 37 (D.D.C. 2009);

- reports and correspondence regarding alleged misconduct by Department of Treasury
  personnel that were filed in court, *see Cobell v. Norton*, 157 F. Supp. 2d 82, 90 (D.D.C.
  2001) (holding that "the right of the public to be informed as to what disciplinary actions
  have either been taken or proposed against the six public officials is beyond question");

- search warrant materials from the then-completed investigation into alleged campaign
  finance violations in the 2010 District of Columbia mayoral election, *see Matter of the*

*Application of WP Co. LLC*, No. CV 16-MC-351 (BAH), 2016 WL 1604976, at *1–2 (D.D.C. Apr. 1, 2016); and

- settlement agreements stemming from a Metrorail crash that was "the deadliest event in WMATA's history," *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 7–8 (D.D.C. 2013).

To be sure, the "mere fact that a case is high profile in nature does not necessarily justify public access" in itself. *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 294 (4th Cir. 2013). But in considering whether access would serve the vital First Amendment interests in public monitoring of the government's exercise of power, the fact that a criminal trial is the subject of intense scrutiny and political discussion should weigh strongly in favor of disclosure. For example, in the *Guantanamo Bay* case, Judge Hogan acknowledged the "unwavering" public interest in the case—noting that "[t]he issue of what to do with the detainees at Guantanamo Bay remains a source of great public interest and debate"—but, the court observed, "[t]he public's understanding of the proceedings … is incomplete without the factual returns. Publicly disclosing the factual returns would enlighten the citizenry and improve perceptions of the proceedings' fairness." 624 F. Supp. 2d at 37, 39. Likewise here, the fact that the OSC investigation ultimately concerns the integrity of the presidential election only heightens the First Amendment interests. *See, e.g., Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("[I]t can hardly be doubted that the constitutional guarantee [of free speech] has its fullest and most urgent application precisely to the conduct of campaigns for political office."). But the public's understanding—and, as importantly, its perception of the fairness—of these proceedings will be impaired without access to the documents underlying the Court's decisions. These interests are all the more vital when the integrity of the investigation and these proceedings have been attacked on a nearly daily basis as a "witch hunt."

Accordingly, the First Amendment requires that the public have access to the Court

Documents absent compelling reasons to keep the materials sealed.

> **2.     The Government Cannot Show a Compelling Reason to Seal Information Once an Ongoing Investigation Is Complete or the Information Otherwise Becomes Publicly Known**

Where the First Amendment right of access attaches, the government (or whichever party

is seeking to prevent disclosure) must show that sealing serves a compelling governmental

interest and is narrowly tailored to serve that interest. *Globe Newspaper Co.*, 457 U.S. at 606–

07. The D.C. Circuit has articulated this standard as a three-prong test, where the presumption of

access can be overcome only if the party opposing disclosure shows that "(1) closure serves a

compelling interest; (2) there is a substantial probability that, in the absence of closure, this

compelling interest would be harmed; and (3) there are no alternatives to closure that would

adequately protect the compelling interest." *Robinson*, 935 F.2d at 290 (citation omitted). To

the extent the Court cannot make "specific" "findings" that all three prongs of this test are met,

the Court should order the material unsealed. *Press-Enterprise I*, 464 U.S. at 509–10.

Here, the parties' motions to file the Court Documents under seal were, themselves, filed

under seal. Therefore, the Post does not know the asserted basis for withholding the documents

from public view. However, the Government's sentencing memorandum (publicly filed on

December 4, 2018) suggests that at least some of the documents were filed under seal because

they "include[] sensitive information about" what were at that time "ongoing investigations."

ECF No. 46 at 2.

In light of the closure of the OSC investigation, it appears that the asserted basis for

sealing the Court Documents may no longer apply. *Cf. In re Application of New York Times*, 585

F. Supp. 2d at 88 (holding that First Amendment right of access applies to search warrant

materials after investigation concluded). Indeed, the Government has expressly stated that

General Flynn's cooperation with the investigation is now "complete."  ECF No. 71 at 2.

Therefore, at a minimum, the Government should be required to show cause why the Court

Documents must remain sealed despite the closure of the principal "ongoing investigation" to

which the information related.

Another development that could further undermine the need to keep the documents sealed

is if the sealed information has become known to the public by other means.  In *Robinson*, the

government sought to seal the plea agreement of a defendant who had cooperated in the

investigation of D.C. Mayor Marion Barry to protect the then-ongoing investigation and the

safety of the defendant and his family.  935 F.2d at 291.  The D.C. Circuit acknowledged that

those interests *could* justify sealing, but held that the government's "assertions fail[ed]" because

"the fact that the plea agreement was entered into in exchange for [the defendant's] cooperation

was already within the public knowledge," and had even been mentioned in a press conference

by the U.S. Attorney.  *Id.*  The court concluded that, "[b]ecause disclosure of the contents of the

plea agreement would only have confirmed to the public what was already validated by an

official source—that [the defendant] had agreed to cooperate with the government—it could

hardly have posed any additional threat to the ongoing criminal investigation," nor would

disclosure realistically "pose any extra threat to the safety of [the defendant] and his family."  *Id.*

at 292.  Accordingly, the government was not able to show a "compelling interest to justify

sealing the plea agreement."  *Id.  See also In re Special Proceedings*, 842 F. Supp. 2d at 245–46

(finding no compelling reason to keep report of alleged prosecutorial misconduct sealed where

"the identity of the subjects was known from the outset of the investigation" and "the matters

under investigation were largely known to the public from the outset and arose from the subject

attorneys' conduct during the proceedings in a highly-publicized criminal trial").

In the analogous context of grand jury proceedings, which are confidential under Rule 6(e) of the Federal Rules of Criminal Procedure, the D.C. Circuit has acknowledged "the common-sense proposition that secrecy is no longer 'necessary' when the contents of grand jury matters have become public." *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006).  Thus, the D.C. Circuit held that a concurring opinion in an appeal stemming from the prosecution of White House official Scooter Libby should not be sealed, even though the opinion referred to information from grand jury documents.  As the court explained, "Libby's indictment, now part of the public record, reveals some grand jury matters, and we see little purpose in protecting the secrecy of grand jury proceedings that are no longer secret." *Id.*

Similarly, in *In re North*, the D.C. Circuit ordered release of the Independent Counsel's final report of the Iran-Contra investigation, despite the fact that the report discussed grand jury material, since that information had already leaked out and "became part of the media accounts" of the controversy. 16 F.3d 1234, 1244 (D.C. Cir. 1994).  The court understandably declined to "formulate a rule that once a leak of Rule 6(e) material has occurred, government attorneys are free to ignore the pre-existing bond of secrecy." *Id.* at 1244.  But, the court acknowledged, "[t]here must come a time … when information is sufficiently widely known that it has lost its character as Rule 6(e) material.  The purpose in Rule 6(e) is to preserve secrecy.  Information widely known is not secret." *Id.* at 1245. Given the court's "conclu[sion] that it is in the public interest that this matter of extended national controversy be afforded as full a conclusion as possible," the court ordered the report released despite the fact it contained previously-secret grand jury information.  *Id.*[2]

---

[2] To the extent any information in the Court Documents was filed under seal as grand jury material under Fed. R. Crim. P. 6(e), the Post notes that the Reporters Committee for Freedom of the Press (the "RCFP") has filed an application with Chief Judge Howell seeking an order

Here, the sealed information in the Court Documents may have already emerged in the course of other proceedings stemming from the OSC investigation. Other sealed information may be revealed if and when the OSC's final report is released. Again, the Government should be required to show—and the Court must make specific, on-the-record findings—that the compelling reasons that originally justified the sealing continue to apply if the documents are to be withheld. *Press-Enterprise I*, 464 U.S. at 509–10. And if the Government cannot make that showing, the documents should be unsealed pursuant to the First Amendment right of public access to criminal proceedings.

**B.      The Public Also Has a Presumptive Right to Access Court Documents Under the Common law**

In addition to the right of access under the First Amendment, the Court Documents are also subject to the common law right to "inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597. Because the right of access under the First Amendment is stronger—and indisputably applies to the Court Documents—the Post discusses the common law right only briefly.

The common law right attaches to filings "on which a court relies in determining the litigants' substantive rights." *United States v. El-Sayegh*, 131 F.3d 158, 162 (D.C. Cir. 1997) (citation omitted). It is difficult to imagine documents that fall more squarely within this description than those affecting a court's decision on a criminal defendant's sentence. As courts have explained, "sentencing is an integral phrase in a criminal prosecution," and "[s]entencing memoranda, which contain the substance of the parties' arguments for or against an outcome, are

---

authorizing the release of grand jury material cited, quoted, or referenced in the report of Special Robert S. Mueller III. *See* 1:19-mc-00045-BAH. The Post incorporates the arguments in the RCFP's application here by reference and notes, further, that a decision in that case may have the effect of removing a similar objection to disclosing sealed information in this case.

clearly relevant to a studied determination of what constitutes reasonable punishment." *Kravetz*, 706 F.3d at 56 (holding that sentencing memoranda are subject to common law right of access). *See also Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 667 (D.C. Cir. 2017) (explaining that legal briefs are "judicial documents" subject to common law right of access because they "can affect a court's decisionmaking process even if the court's opinion never quotes or cites it," and observing that, "[t]o affect the court's decision, after all, is the reason parties file briefs"). The sentencing memoranda (and associated filings) in this case are plainly subject to the presumptive common law right to inspect judicial records.

The D.C. Circuit has explained that, under the common law, "the starting point in considering a motion to seal court records is a strong presumption in favor of public access to judicial proceedings." *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (internal quotation marks and citation omitted). In determining whether that strong presumption has been overcome, courts in this Circuit generally look to the factors originally set forth by the D.C. Circuit in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980):

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife*, 865 F.3d at 665–66 (citation omitted) (describing *Hubbard* test as "our lodestar").

Without knowing more about the precise reasons for sealing the Court Documents, it is difficult to make a full assessment of all of the relevant factors. But it is certainly beyond cavil that the public has a significant interest in understanding these proceedings to the greatest extent possible. *See supra* Section I.A.1. To the extent the Government is not able to make a showing

that the interest in sealing the redacted material from the Court Documents outweighs the profound public interest in full access to these proceedings, the Court should order that material unsealed.

## II.     THE COURT SHOULD IMPLEMENT A REASONABLE PROCEDURE TO RE-ASSESS THE NEED FOR CONTINUED SEALING AS CIRCUMSTANCES CHANGE GOING FORWARD

As noted above, the closure of the OSC investigation may significantly undermine the reasons to keep the Court Documents under seal.  The release of the OSC's final report will likely have the same effect.  The Post recognizes that related investigations to which the information in the Court Documents relates may still be ongoing, but that too may change any day.  Given the well-established principle that, "once found to be appropriate, access should be immediate and contemporaneous," *Grove Fresh*, 24 F.3d at 897, the Post respectfully submits that implementing a process to facilitate the unsealing of information that no longer needs to be sealed as quickly as practicable.[3]

Department of Justice guidelines acknowledge the "vital public interest in open judicial proceedings," which imposes on the Government a "general overriding affirmative duty to oppose their closure."  28 C.F.R. § 50.9.  When records are nevertheless sealed, and remain sealed sixty days after the termination of the proceeding, the guidelines require the Government to review the records "to determine if the reasons for closure are still applicable," and "[i]f they are not, an appropriate motion will be made to have the records unsealed."  *Id.* § 50.9(f).  This review is to be repeated every sixty days until such time as the records are unsealed.  *Id.*

---

[3] The Post has requested similar relief in connection with the sealed documents in *United States v. Manafort*, and expects the Government's response to this proposed approach to future unsealing on April 15, 2019.

In light of the strong public interest in—and potentially important political implications of—these proceedings, the Post respectfully submits that a more frequent review of the appropriateness of sealing the Court Documents is necessary to vindicate the public's First Amendment and common law rights.  In particular, the Government should be required to promptly notify the Court with a public filing and motion to unseal when a major event in the investigation obviates a claimed basis for sealing or redaction.  For example, if any other still-ongoing investigation closes or the OSC's final report of its investigation is released to the public, the Government should be required to immediately assess whether the need for continued sealing of any portion of the Court Documents remains, and seek unsealing as appropriate.[4] And, in any event, the parties should be required to assess the need for continued sealing of the Court Documents and report to the Court on a reasonably regular basis—for example, every four weeks.

As the D.C. Circuit and Supreme Court have repeatedly affirmed, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (quoting *Mills v. D.C.*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))) (internal quotation marks omitted).  And courts have recognized "[t]he public cannot properly monitor the work of the courts with long delays in adjudication based on secret documents."  *Lugosch*, 435 F.3d at 127.  That monitoring is all the more important in a case like this; accordingly, the Court should ensure that the public has as much access to these proceedings as possible, in as close to "real time" as possible.

---

[4] Of course, if any one of those or other similar events occurred, the Post also reserves the right to supplement this Motion or make a further application to unseal additional materials.

## <u>CONCLUSION</u>

The public has a presumptive right of access to the Court Documents under both the First Amendment and the Common Law, and any sealed material that does not meet both tests must be unsealed.  In addition, the Post respectfully requests that the Court implement a procedure under which the Court and parties regularly re-assess the need for keeping sealed information secret and promptly seek unsealing of any material for which a compelling need for secrecy no longer exists.

Dated:   Washington, D.C.
         April 11, 2019

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:  /s/Laura R. Handman

Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 1048522; admission to this Court pending)

1919 Pennsylvania Avenue NW, Suite 800
Washington, D.C. 20006
Tel: (202) 973-4200
Fax:  (202) 973-4499
Email:  laurahandman@dwt.com
Email:  ericfeder@dwt.com

*Attorneys for Petitioner WP Company d/b/a The Washington Post*