UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE** | ) |
| **APPLICATION OF THE WASHINGTON** | ) |
| **POST COMPANY, LLC,** | ) Miscellaneous Action |
| | ) No. 19-051 |
| **Plaintiff,** | ) |
| | ) June 24, 2019 |
| **v.** | ) 11:00 a.m. |
| | ) |
| **UNITED STATES OF AMERICA,** | ) Washington, D.C. |
| | ) |
| **Defendant.** | ) |

*TRANSCRIPT OF MOTION HEARING PROCEEDINGS*
*BEFORE THE HONORABLE EMMET G. SULLIVAN,*
*UNITED STATES DISTRICT COURT JUDGE*

APPEARANCES:

For the Plaintiff:       **Eric J. Feder, Esq.**
                         DAVIS WRIGHT TREMAINE LLP
                         1919 Pennsylvania Avenue, N.W.
                         Suite 800
                         Washington, DC 20006
                         (202) 973-4273
                         Fax: (202) 973-4499
                         Email: Ericfeder@dwt.com


                         **Laura Rose Handman, Esq.**
                         DAVIS WRIGHT TREMAINE LLP
                         1919 Pennsylvania Avenue, N.W.
                         Suite 800
                         Washington, DC 20006
                         (202) 973-4224
                         Fax: (202) 973-4499
                         Email: Laurahandman@dwt.com

APPEARANCES:  Cont.

For the Defendant:          **Brandon Lang Van Grack, Assistant**
                            **U.S. Attorney**
                            U.S. DEPARTMENT OF JUSTICE
                            Special Counsel's Office
                            950 Pennsylvania Avenue, NW
                            Washington, DC 20530
                            (202) 616-0800
                            Email: Brandon.van.grack@usdoj.gov

                            **Deborah A. Curtis, Assistant U.S.**
                            **Attorney**
                            U.S. ATTORNEY'S OFFICE FOR THE
                            DISTRICT OF COLUMBIA
                            555 Fourth Street, NW
                            Washington, DC 20530
                            (202) 252-6920
                            Email: Deborah.curtis@usdoj.gov

For Interested Party        **Sidney Powell, Esq.**
Michael Flynn:              SIDNEY POWELL, P.C.
                            2911 Turtle Creek Blvd. #300
                            Dallas, TX 75219
                            (214)707-1775

                            **Jesse R. Binnall, Esq.**
                            HARVEY & BINNALL, PLLC
                            717 King Street
                            Suite 300
                            Alexandria, VA 22314
                            (703) 888-1943
                            Email: Jbinnall@harveybinnall.com

                            **W. William Hodes, Esq.**
                            THE WILLIAM HODES LAW FIRM
                            3658 Conservation Trail
                            The Villages, FL 32163
                            (352) 399-0531
                            Fax: (352) 240-3489
                            Email: Wwh@hodeslaw.com

       **Court Reporter:**          **Scott L. Wallace, RDR, CRR**
                            Official Court Reporter
                            Room 6503, U.S. Courthouse
                            Washington, D.C. 20001


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1          **<u>MORNING SESSION, JUNE 24, 2019</u>**

2    (11:13 a.m.)

3          THE COURTROOM CLERK:  Your Honor, this is Miscellaneous

4    Case 19-051, in the matter of the Application of the Washington

5    Post Company, LLC versus United States of America.

6          Will all parties please come forward to this lectern and

7    identify yourselves for the record.

8          MR. FEDER:  Good morning, Your Honor.  Eric Feder from

9    Davis, Wright, Tremaine for the Washington Post, and I'm with my

10   colleague, Laura Handman.

11         THE COURT:  All right.  Good morning to you both.

12         MR. VAN GRACK:  Good morning, Your Honor.  Brandon Van

13   Grack on behalf of the United States, and with me at counsel

14   table is Deborah Curtis.

15         MS. CURTIS:  Good morning, Your Honor.

16         THE COURT:  Good morning.

17         MR. BINNALL:  Good morning, Your Honor.  Jesse Binnall on

18   behalf of General Flynn, and with me today is Sidney Powell,

19   admitted *pro hoc vice*, and William Hodes.

20         THE COURT:  All right.  Good morning to you both.

21         MS. POWELL:  Good morning.

22         THE COURT:  I signed an order this morning granting the

23   motion for *pro hac vice*.  You're welcome to sit at the table.

24   You don't have to sit there.  You can sit wherever you want to

25   sit, but if you want to join counsel table, you're more than

1    welcome to do so.  Let me just say a couple of things.  First of

2    all, I appreciate the efforts that the attorneys have made to

3    address the issues and resolve certain of the disclosure issues.

4    Thank you very much.  Everyone knows my views on the First

5    Amendment.  I've written on the First Amendment numerous times.

6    It's alive and well in this courtroom, and there are many areas

7    of agreement, but there's still some areas of disagreement.

8         So, I guess the first question I have is whether or not

9    the parties -- and I say the parties including Mr. Flynn -- have

10   been able to reach any further agreements?  Why don't I just

11   invite principle counsel to the microphone, because I'm going to

12   have a series of questions that each of you can respond to.

13        MR. FEDER:  Thank you, Your Honor.

14        THE COURT:  Yes.

15        MR. FEDER:  And also, on behalf of the Post, we appreciate

16   Your Honor's attention to the First Amendment interests here and

17   constantly stressing the importance of access to these

18   proceedings.  We have not had further discussions since the

19   motions have been briefed.  We have been conferring along the way

20   and have always been able to work productively.

21        At this point, it seems like there are basically the

22   remaining issues of what's still redacted, which we obviously

23   don't know what is behind the redactions, and so we are asking

24   the Court to make that determination, to the extent it hasn't

25   already.  So, we don't take a position on whether the redactions

1    have -- are consistent with the First Amendment because we don't

2    know what they are, and there's not much further conferring we

3    could do to uncover that at this point.

4         And then I guess the second issue is, to the extent that

5    the redactions and sealing at this point is based on particular

6    circumstances that are present today that may, indeed, to the

7    extent the Court determines justify continued sealing, that that

8    may change for any number of reasons, which we can get into, and

9    we have not yet really reached agreement on what the process will

10   look like going forward for how to address that reality.

11        THE COURT:  All right.  One thing that has changed, and my

12   understanding is that the Post no longer is seeking any

13   information -- any personal information set forth in the

14   sentencing memorandum regarding Mr. Flynn and/or any people who

15   may have submitted letters on his behalf.

16        MR. FEDER:  That's correct, Your Honor.  We -- it wasn't

17   clear initially from the way the docket was set up which

18   documents were which.  Now that we see the totality of the

19   redactions to the sentencing memorandum are those kinds of

20   personal information of totally unrelated third parties and, you

21   know, addresses and such, we are no longer seeking further

22   unsealing of that document.

23        THE COURT:  All right.  All right.  Let me ask you this:

24   There's been some discussion in pleadings about a sunshine date,

25   which piqued my interest.  Assuming that there are compelling

1    interests for further sealing, and I'll hear from the

2    government's attorney about that, if there were a sunshine date,

3    what would that date look like?

4         MR. FEDER:  So, we, in our reply brief, suggested -- well,

5    the sunshine date was used in the Michael Cohen search warrant

6    document cases in both the Southern District and here, and there

7    they set a status report date of three months from the date the

8    Court issued the order.  We think that makes sense.

9         Obviously, we would be happy with sooner, and, in this

10   particular case, we would also say that one week or some fairly

11   short amount of time after the defendant is sentenced would be an

12   appropriate time because it seems to us quite clear, at least

13   some of the circumstances that may justify sealing will have

14   changed then, so we would say three months from now or whenever

15   the Court issues an order or one week after the defendant is

16   sentenced, whichever is sooner.

17        THE COURT:  All right.  This case is somewhat interrelated

18   to the criminal case because -- and that case will be called

19   later this afternoon --

20        MR. FEDER:  -- correct --

21        THE COURT:  -- because in that case, it's certainly

22   understandable why new counsel would seek to have more time

23   within which to be better prepared to represent their client, and

24   the Court, in all likelihood, will give them that time.

25        So, I don't know how much time would be -- hypothetically,

1    though, if we're talking about 90 days from today's date, and I

2    think there was some reference to three months or so, I don't

3    want to get too far ahead of myself because that case is not

4    being called now, but I just need your responses.  If you're

5    talking about -- let's just assume, hypothetically, that the

6    Court grants the new attorneys the 90 days from today's date that

7    they want to have, and that would take us to mid-September or so,

8    and that may well be for a status hearing, I'm not sure --

9    because I think also in that case the parties have suggested

10   another status report in August, so there's some moving pieces

11   there.  Let's assume that sentencing is scheduled mid-September.

12   Would it make sense for the Court to, at that point, give the

13   government a couple of weeks or so after that to inform the Court

14   what its position is with respect to matters that are still

15   sealed and the compelling interest to keep in place a seal for

16   other matters?  Because there may be other ongoing

17   investigations.  There could be other compelling reasons and

18   interests why the seal should remain in place.  By the same

19   token, there could be compelling reasons why the seal should be

20   lifted with respect to other information.  I just want to be fair

21   about that to both sides.

22        MR. FEDER:  Sure.  And I think the -- from our

23   perspective, the answer is, one, yes, some number of time,

24   whether one week or two weeks, some time shortly after the

25   defendant is sentenced would be certainly an appropriate time for

1    the government to come back and weigh in with the Court whether

2    sealing is necessary, but the reality is, as we understand it,

3    the reasons for the sealing, as they exist today for the

4    redactions that remain, are not just hinging on what happens in

5    the underlying criminal case, it's ongoing investigations in

6    other areas.  And so that information, for example, could become

7    public through some other means, or those other investigations

8    could conclude such that revealing the information that's

9    currently sealed would no longer have any adverse impact on an

10   ongoing investigation.

11        And so if, for example, the sentencing is put off for six

12   months from now, the fact is three months from now or however

13   long in-between, the reasons for some of the other sealing very

14   well could end.  That's why we say three months from now or the

15   sentencing, whichever is sooner.  We're not wedded to one

16   particular calendar.  Obviously, there's nothing magic about

17   three months.  That's just what seemed like enough time to allow

18   events to actually progress to the point that the circumstances

19   would change.

20        THE COURT:  Am I correct that the Washington Post and the

21   government were able to reach an agreement with respect to a

22   sunshine date in the matters before Chief Judge Howell?

23        MR. FEDER:  So, I wasn't representing the Post in that,

24   but I believe it was a media conglomerate or multiple media

25   entities, of which the Post was a part, and yes, they reached an

1  agreement -- I think the media entities proposed it as a sunshine

2  date, and the government agreed to a status report to basically

3  weigh back in with the Court.  They did reach agreement on that,

4  and that's what's in place there.

5          THE COURT:  All right.  And the matter before Judge

6  Jackson, was the Washington Post involved in that as well?

7          MR. FEDER:  With regard to the Manafort --

8          THE COURT:  Yes.

9          MR. FEDER:  Yes.  And that is -- we did represent the

10  Washington Post in that matter.

11          THE COURT:  Judge Jackson had a hearing last fall,

12  October, I believe, or so, a sealed hearing.

13          MR. FEDER:  She had -- there were a couple of sealed

14  hearings in the late fall/winter and then in the beginning of

15  this year, and most of the transcripts of those hearings have --

16          THE COURT:  You didn't participate in those hearings?

17          MR. FEDER:  No, we were not involved.  Those hearings were

18  -- there were hearings that were, in fact, sealed, and which

19  Judge Jackson then ordered the parties to confer and agree on,

20  redactions to a transcript that could then be released to the

21  public.

22          THE COURT:  So, you were part of that process, that

23  working process?

24          MR. FEDER:  No, actually that happened, actually, *sua*

25  *sponte*.  Judge Jackson required the parties to do that.  We

1     subsequently came in and made motions to unseal the various

2     documents that have been filed either totally under seal or in

3     substantially redacted form.  That motion is fully briefed and

4     pending before Judge Jackson.

5          THE COURT:  So, her release of material last Friday

6     doesn't in any way affect that motion that's currently pending

7     before Judge Jackson.

8          MR. FEDER:  Correct.  Or it certainly doesn't moot any of

9     our motions.  Whether that release of material was related in

10    some way or prompted by our motion, we don't know, but what was

11    released on Friday is not -- those are not the documents that we

12    are specifically seeking.

13         THE COURT:  How long has your motion been pending,

14    approximately?

15         MR. FEDER:  Six to eight weeks, maybe.

16         THE COURT:  All right.  Okay.  Has a hearing been

17    scheduled or anything?

18         MR. FEDER:  No, not that we've heard yet.

19         THE COURT:  All right.  That's very helpful.  Thank you.

20    Sorry.  I'm not referring to any of the other areas or any

21    individuals, so it's difficult getting answers to hypothetical

22    scenarios, but that's the best I can do.  But thank you very

23    much.

24         Counsel.

25         MR. VAN GRACK:  Yes.  To address the last point first,

1    perhaps in terms of a status report or some date, when we

2    conferred with counsel, the representation was 90 days.  Similar

3    to the math that the Court just used, 90 days sounds about right

4    when a sentencing would probably be ripe, and so it's not so much

5    an objection to 90 days, it's more grounding that in a particular

6    hearing and process and, therefore, making it, perhaps, more

7    likely that some of the information would become available to be

8    unsealed, because the government just took a thorough review

9    involving numerous agencies to sort of make this determination.

10   And so it's not quite a concern about 90 days, it's that

11   grounding that into a hearing, which the government's expectation

12   would be in about 90 days, give or take something the government

13   would be comfortable with.  So, really, we defer to the Court in

14   terms of how you want to calculate that, but I think the thought

15   process that the Court is having is the same thought process the

16   government is having.

17        THE COURT:  All right.

18        MR. VAN GRACK:  And in terms of the first point, I think

19   the descriptions were accurate, but I think, even narrowing the

20   disputes even further, I think it's worth pointing out after --

21   after the motion was filed and the government undertook this

22   review to limit as much as possible the information that was

23   redacted, there are only three documents at issue right now where

24   there are remaining redactions, and I just think, because there

25   have been multiple filings in this case, it's worth just

1    clarifying that point for the Court and for the public as well.

2         THE COURT:  We're on the same page there.

3         MR. VAN GRACK:  All right.  Thank you.  Just to state what

4    those three documents are, and again it's the government's

5    understanding that those are the only documents that are now in

6    dispute -- I shouldn't say dispute -- where there are redactions

7    that the Washington Post is seeking to unseal, one is the

8    addendum to the government's sentencing memorandum, and that's

9    the addendum that describes Michael Flynn's cooperation, and

10   substantial portions of that document have now been unredacted

11   after the government made a motion to the Court and the Court

12   granted it, and all of the references to the Special Counsel

13   Office's specific investigation have now been unredacted, but

14   there are some limited redactions that remain pertaining to

15   investigations that are not public and aspects of an

16   investigation that are not public.  That's one of the documents.

17        The second document is an FBI interview report of Peter

18   Strzok, an interview that occurred on July 19th, 2017.  That is a

19   document that was attached to a filing from the defendant --

20   defense counsel, and that document has -- there was some

21   information that was unredacted from that, but right now there

22   are still some limited redactions to that document.  And then the

23   third document is a -- we refer to that as the Pete Strzok 302, I

24   should say, in our filings.

25        And then the third document is an interview report from

1   the FBI of an interview of Michael Flynn on January 24th, 2017,

2   which we refer to as the Flynn 302, and on that document there is

3   a single name that remains redacted and the date of birth of the

4   defendant.  And the other piece -- and so, one, just to narrow

5   the scope; but two, our understanding of, in particular, the

6   movant's reply to the government's response is exactly as it was

7   described, which is they questioned the sufficiency of the record

8   and the specificity of the government's filings in the Court's

9   order, as opposed to challenging whether or not this information

10  specifically can be sealed, or they simply are deferring to the

11  Court, as opposed to deferring to the government on that piece.

12          THE COURT:  All right.  Great.  Thank you very much.

13          MR. FEDER:  If I could clarify.

14          THE COURT:  I'm trying mightily not to repeat any names,

15  but, anyway, thank you.  You've addressed every name that the

16  Court had in mind and every scenario, so thank you.

17          MR. FEDER:  Just to clarify a couple of points on that.

18  So, we agree there are three documents remaining, but I think

19  there's discrepancy between us, then, as to which particular

20  documents remain.  The addendum to the sentencing memorandum,

21  that's correct.  The Strzok 302, that's correct.  The January

22  24th, 2017 Flynn 302, which the government substantially

23  unredacted later because we made that as part of a supplemental

24  motion, that, we agree, does just have a birth -- the defendant's

25  birth date and what looked to be sort of nonsubstantive agency

1   coding, and so we agree that there's no further unredaction

2   necessary at this time for that document.  That was filed in its

3   currently unredacted form as Docket 85, but there's an additional

4   document, which is the January 24th, 2017 memo written by then

5   Deputy FBI Chief McCabe, which is mostly unredacted but does have

6   a couple of redactions that clearly are substantive, and so that

7   document, from our perspective, is sort of live in the dispute.

8         MR. VAN GRACK:  And, Your Honor, if -- I appreciate that

9   question, but also the opportunity to clarify that specifically,

10   which is --

11         THE COURT:  -- sure --

12         MR. VAN GRACK:  -- one of the documents that was requested

13   by the Washington Post to redact is a document filed -- it's ECF

14   51-1, and it was two documents that the defendant relied on,

15   referenced and relied on in his sentencing memorandum.  One was

16   the Pete Strzok 302, and the other was the McCabe memorandum.

17   But what they relied on and what the document at issue is, is the

18   51-1, two documents that the government provided to defense

19   counsel in discovery.  And the government provided those

20   documents with redactions because -- the entirety of those

21   documents were not responsive to the Court's standing *Brady*

22   order, and there are other reasons why those redactions occurred.

23         So, the document at issue, even though it's 51-1 that

24   contains two documents, the McCabe memo that is part of that

25   51-1, the document that defense counsel received, has now been

1    publicly available.  That document that isn't in the judicial

2    record that's on the docket that defense counsel is relying on is

3    in the public record, and that's why the government is submitting

4    that that document is no longer at issue, even though there are

5    other aspects of the document that were not provided to defense

6    counsel, not redacted.  That's not part of the document.  That's

7    not part of the judicial record.  Defense counsel did not rely on

8    that information in its sentencing position.  The government is

9    not relying on that information in its sentencing position.

10        THE COURT:  All right.  Thank you.  Let me just say one

11   thing, because you've mentioned it.  I have not said anything

12   about this before, but there's been commentary about the reasons

13   why the Court issued a *Brady* order in this case, and the simple

14   answer is I did it in this case because I do it in every case.

15   The plea had already occurred, but I didn't think twice about it.

16   It's something I do in every case, and so that's the simple

17   answer.  But you mentioned that, and I have not -- there were

18   times when I said, I'll say something about it, but it's not

19   because I knew anything hadn't been produced or anyone had made

20   any complaints under seal about anything, I just did it because I

21   always do it, simple as that.

22        Ms. Powell, anything you want to add to the discussion?

23        MS. POWELL:  Thank you, Your Honor.

24        THE COURT:  Sure.

25        MS. POWELL:  We support the memo that Covington filed in

1       the case and also the government's position.  In addition, we

2       don't know what we don't know.  They file things under seal that

3       we haven't seen.

4               THE COURT:  Right.

5               MS. POWELL:  So if the Court is inclined to unredact any

6       of that information, we would like an opportunity to review it

7       before it's disclosed to the Post and make any sort of briefing

8       or provide the Court with any information that we would like to

9       provide at that time.

10              THE COURT:  Right, because you are differently situated,

11      aren't you?  That's a good point.

12              MS. POWELL:  Yes.

13              THE COURT:  Okay.

14              MS. POWELL:  Thank you.

15              THE COURT:  Let me just ask you, and we'll talk about this

16      in the other case that's called at 12:30, am I correct that you

17      and your client are still seeking about 90 days to get up to

18      speed to represent your client?

19              MS. POWELL:  At least, Your Honor.

20              THE COURT:  At least.

21              MS. POWELL:  Yes, sir.

22              THE COURT:  So, you're not asking for a sentencing date in

23      90 days, then?

24              MS. POWELL:  No, sir.

25              THE COURT:  Okay.  All right.  And I understand from

1    reading the pleadings that Mr. Flynn's prior attorneys are in

2    possession of the voluminous materials, correct?

3        MS. POWELL:  Yes, sir.  They have now provided three hard

4    drives --

5        THE COURT:  All right.

6        MS. POWELL:  -- and there's still more to come.

7        THE COURT:  All right.  One question that will come up

8    during the next hearing and I wanted you to think about is

9    whether or not everyone or anyone on your team has the security

10   clearance for information.  I don't know if it -- I don't know

11   what the evidence is out there, I just don't know, and I don't

12   know if that question ever came up with prior counsel or not, but

13   sometimes that can add to a delay as well.  So, I just raise it

14   because we'll have probably a security classification officer

15   here who can answer any questions about that, but I just wanted

16   to raise it because, if that's going to be an issue, then that

17   needs to be addressed sooner than later.

18       MS. POWELL:  Thank you.

19       THE COURT:  All right.  Okay.  All right, counsel.  Let

20   me -- I just have a few questions for the government.  The

21   government's done a great job of articulating in writing the --

22   what the government believes are the compelling interests, but

23   there have been some developments since pleadings have been

24   filed.  The Court's ordered some information be released on its

25   own.  The government, to its credit -- and I really appreciate

1    that because oftentimes there's a -- you know, there's a food

2    fight about what should be released, and I really appreciate the

3    efforts the government has made to release information.  So, I

4    just want you, counsel, to address today what the

5    current compelling interests are with respect to the remaining

6    redactions.  And I think you've done a good job of alluding to

7    who the individuals are and scenarios, but, just so there's a

8    public record of that and just so the public can hear that in

9    this courtroom --

10            MR. VAN GRACK:  Yes, Your Honor.

11            THE COURT:  -- I'll give you the opportunity to do so.

12            MR. VAN GRACK:  And I'll address -- even though the

13   Washington Post has identified the Michael Flynn 302 as no longer

14   an issue, I'll just address all three documents that the

15   government raised, nevertheless.

16            THE COURT:  Right.

17            MR. VAN GRACK:  So, the three remaining interests, the

18   three primary compelling interests of those documents, are harm

19   to ongoing investigations, privacy interests and information that

20   raises the prospect of an issue of the deliberative process

21   privilege, and we'll get to that one, I think, last --

22            THE COURT:  That's a very interesting one.  I have some

23   questions about that and about the authority for that, but let's

24   put that off for a second.

25            MR. VAN GRACK:  Yes, Your Honor.  And so first, with

1   respect to the harm to ongoing investigations, that interest only

2   concerns the addendum to the government's sentencing memorandum.

3   This is the document that describes the various forms of the

4   defendant's cooperation.  And the redactions that remain in the

5   addendum are items that the attorneys handling these

6   investigations that are either not public or aspects of

7   investigations that are not public had identified to the

8   government as, if this information is released, it would harm

9   their ongoing investigations.  Those are the only redactions that

10  have occurred that still exist with respect to the addendum.

11       With respect to the privacy interests, and those are the

12  names of -- those only concern the Strzok 302 and the Flynn 302,

13  and those are three [sic] names -- and the names of individuals

14  who conducted the interviews and the defendant's date of birth.

15       The individuals are not members of the Senior Executive

16  Service.  In the Washington Post's reply, they asked a question

17  as to whether the redacted names are prominent members of the

18  U.S. president's campaign or administration.  That is not the

19  case.  These are government employees who conducted the

20  investigation.

21       In the context of FOIA and other analogous contexts, such

22  as government misconduct or OPR investigations, there's often a

23  line drawn between high-level employees and low-level employees

24  and sort of balancing the public right to information and the

25  privacy interests, and here the government submits these are not

1    Senior Executive Service individuals or part of the Senior

2    Executive Service.  These are not individuals who have put

3    themselves out there expecting that their names were going to be

4    exposed or associated with particular work.

5         They're -- part of the reason that line gets drawn is

6    there are concerns about harassment in a situation like this in

7    this particular case that's not a hypothetical.  Even though the

8    investigation involved in the Special Counsel's Office concluded

9    months ago, individuals associated with it continue to be

10   harassed on a daily basis in terms of different forums, different

11   persons, different media.  It's not hypothetical, which

12   sometimes, when the courts are debating these issues, it's

13   something that could happen, and the reality is that anyone whose

14   name is associated with this particular work, that name does come

15   out, and the reality is it's written about and discussed, and

16   harassment does occur.

17        And then the final piece worth highlighting is the

18   individuals who are members of the FBI specifically identifying

19   the role they played in this investigation, in interviews that

20   they conducted, has the potential to impact their ongoing work

21   with the FBI because they have not been necessarily identified as

22   being within a particular group within the FBI, and therefore

23   identifying their particular line of work would potentially harm

24   their ability to conduct work in the future.

25        And the final piece, which is the deliberative process

1   privilege, only concerns one document, and that's the Pete Strzok

2   302.  There are two paragraphs in the Pete Strzok 302 where there

3   is information under seal that the government is justified based

4   on the deliberative process privilege.

5        THE COURT:  Is there any authority anywhere for -- we have

6   not been able to find any case authority for that.

7        MR. VAN GRACK:  Your Honor, it is -- the circumstances

8   here are unique.  I think in the Washington Post reply they

9   identify that.  And the government doesn't dispute that, but it's

10  because the circumstances here are unique, because information

11  that is deliberative isn't produced in discovery, normally.

12  Deliberative process privilege -- the privilege is invoked and

13  can be used as a basis to not produce information in discovery,

14  and it's often not recorded in the 302.  A 302 is typically -- an

15  interview is conducted, and the information provided in that

16  interview is written in the 302.  In this investigation -- and

17  Pete Strzok being an example of that -- there are individuals who

18  were interviewed, and the basis of that interview was knowing --

19  or asking questions about why was this interview conducted, how

20  was that interview conducted, what sort of charges were you

21  thinking about, in a way that does not normally occur in a

22  criminal investigation, and it's related to the unique nature of

23  the Special Counsel's investigation.  And in scope, it wasn't

24  just what crimes may have been committed, but who knew what and

25  when, and so you have a unique circumstance where 302s contain

1    deliberative material that normally high-level officials in the

2    FBI and DOJ are not interviewed in terms of how that process

3    works.

4         And then on top of that, in addition to the fact that it's

5    not normally recorded, we produced this material in discovery.

6    And even though the government believes it is deliberative, in

7    complying with the Court's standing *Brady* order, we took the

8    position that we should produce this information, not with the

9    belief that this was going to, therefore, expose that information

10   to the public, with the understanding that there was a protective

11   order in place that limited the use of this information, but we

12   weighed on the side of producing it to defense counsel, and

13   because we produced it that it became part of the document that

14   the defendant ultimately relied on.  And the government's

15   position is that's the reason you don't find case law on this in

16   the topic of sealing, because this information isn't sealed

17   because it isn't produced and it isn't documented.  And part of

18   the government's concern, in terms of the reason why this

19   information is important to keep under seal, is because under the

20   deliberative process privilege, and it sounds like the Court has

21   already -- is a aware of and done the due diligence on the case

22   law, it talks about the potential chilling effect of releasing

23   that information.  And the government submits not only is there a

24   potential chilling effect, but you have the effect of people not

25   conducting those interviews of DOJ and FBI employees to get that

1    deliberative information, and you have the potential chilling

2    effect of parties erring on the side of not disclosing

3    information because it's privileged, and so I think it's, in

4    terms of taking that into account, it's important to understand

5    the potential effect.

6         THE COURT:  Sure.  The 4th Circuit has explained, and I'll

7    quote that, quote, "It is not enough simply to assert this

8    general principle without providing specific underlying reasons

9    for the District Court to understand how the integrity of the

10   investigation reasonably could be affected by the release of such

11   information."  That's in the case of *Virginia Department of State*

12   *Police versus Washington Post,* 386 Fed 3d 567, and it may well be

13   that what the Court should do is afford the government an

14   opportunity to provide additional reasons under seal for the

15   Court's consideration.

16        MR. VAN GRACK:  We're certainly happy to do so, Your

17   Honor.  I think that Fourth Circuit case concerned potential harm

18   to ongoing investigations, which would be the first point the

19   government --

20        THE COURT:  -- That would be one point.

21        MR. VAN GRACK:  In terms of the deliberative process, our

22   argument isn't that the release of that information causes harm

23   to an investigation, it's that it exposes the deliberative

24   process of the FBI and DOJ in terms of decisions they are making

25   about assessment of charges, how to conduct an interview, why to

1   conduct an interview, and the chilling effect, which is the

2   foundation of that privilege that the government is primarily

3   concerned with.

4        THE COURT:  Right.  All right.  And the other point I want

5   the government to address is that, assuming the government's

6   asserted compelling interests narrowly tailored, what are the,

7   quote-unquote, higher values in the case?  Under the second step,

8   the two-part test set forth by the Supreme Court in *Press-*

9   *Enterprise company versus Superior Court of California for*

10  *Riverside County*, 478 U.S. 1, "This Court must determine

11  whether an -- quote -- overriding interest based on findings that

12  closure is essential to reserve higher values and is narrowly

13  tailored to serve that interest -- end quote -- nonetheless

14  exceeds any qualified right of access that attaches."

15       MR. VAN GRACK:  Your Honor, again, thank you for the

16  opportunity for providing greater clarification.  I think each

17  interest has a different higher value.

18       THE COURT:  Right, right.

19       MR. VAN GRACK:  With respect to ongoing investigations,

20  it's the integrity of those ongoing investigations -- and

21  certainly, which I think the Court has alluded to and even the

22  Washington Post, that higher value at some point may dissipate

23  when it's no longer an ongoing investigation, when information

24  about an investigation becomes public, but at the time being,

25  that higher value is the integrity of those ongoing

1    investigations.

2         With respect to the privacy interests, it's the interest

3    of those individuals, it's the interest of those individuals

4    being associated with this in terms of its effect on the ability

5    to potentially continue to do their work with the FBI, it's the

6    privacy interests in terms of when a government employee or a

7    public servant sort of accepts a role knowing whether this is

8    something that they'll be putting themselves out there, like a

9    member of the Senior Executive Service, and acknowledging that

10   this is something that they -- a part of their job versus those

11   who are on the line and simply doing their work with the

12   expectation that it doesn't necessarily expose them to harassment

13   and other particular areas of concern.

14        And, finally, with respect to the deliberative process

15   privilege, that higher value is precisely what we have been

16   discussing, which is the integrity of that process.  And I think

17   it's worth at least spending another moment on the deliberative

18   process privilege, because the government accepts it is -- it is

19   unusual here, but would submit that it is a critical privilege,

20   in terms of the chilling effect on deliberations, the ability of

21   DOJ and FBI employees to feel comfortable and candid in their

22   discussions about an investigation, and it's entirely -- it's

23   that type of environment that exists that provides comfort for

24   folks to provide dissent and to disagree with decisions of

25   individuals.  And when the concern is, well, if I say something

1    that is contrary to others and the chance of that seeing the

2    light of day, I think it does impact the integrity and the

3    quality of the decision-making that occurs.

4         THE COURT:  All right.  Thank you very much, counsel.  Any

5    response?

6         MR. FEDER:  Yes, Your Honor, just a couple of things

7    fairly quickly.  On the deliberative process privilege, obviously

8    we accept that the deliberative process privilege exists and the

9    reasons for it.  It's certainly well-established, but it is -- it

10   does come up almost exclusively in the FOIA context where, I

11   suppose, in the discovery dispute context, we acknowledge the

12   interest at issue, but the -- when the First Amendment right

13   is -- First Amendment right of access has been invoked, the bar

14   is quite high.  And we would also point out in this case that the

15   public interest is profound.

16        Now, again, to be clear, the First Amendment right of

17   access applies in even the most run-of-the-mill misdemeanor case

18   to, you know, high crimes and misdemeanors of executive

19   officials, or, you know, the whole range, of course.  So, the

20   First Amendment does not depend on specific public interests, but

21   the public interests in a case like this is particularly great.

22        And, for example, Mr. Van Grack alluded to the reasons

23   that particular charging decisions were made or particular

24   investigations were undertaken.  Obviously, I don't have to tell

25   the Court that there is extreme public interest in that from all

1    sides of the debate, and so we would submit, certainly, that that

2    public interest is something that should be taken into account in

3    determining whether compelling interests do, indeed, justify

4    sealing of any particular information.

5         As far as the privacy interests, to the extent we're just

6    talking about low-level agent names, that's certainly not the aim

7    of our motion.  We're not looking to uncover the names of people

8    further down the totem pole just for its own sake.  Certainly, in

9    some cases, the specific identities of government officials

10   performing specific tasks is extremely important, but the point

11   here is not necessarily to expose heretofore private agents, you

12   know, or government workers to harassment, obviously.  But part

13   of, I think, what the confusion here is -- and that was actually

14   very helpful what Mr. Van Grack just went through -- is what

15   precisely the justifications for each redaction are.  They

16   obviously made various arguments and, more or less, made them on

17   a document-by-document basis, but even with respect to particular

18   documents, there are sometimes more than one justification.  And

19   so I think we would say, at a minimum, one thing that would help

20   clarify this and create a more robust record for whatever

21   asserted justifications are, would be on a sort of

22   redaction-by-redaction basis, which is actually what in the

23   Mueller report, in the public version of the Mueller report, is

24   what they did.  They have the black bar of the redaction, but

25   then a little label that says "harm to ongoing matter" or "Grand

1    Jury material" or "privacy" or what have you.

2        I think that would help us understand and be able to

3    certainly take a position on particular redactions.  So, for

4    example, in a document where, you know, there's a redaction for

5    someone's birth date and that were the only -- that were the only

6    redaction for which privacy was invoked, then we don't need to

7    worry about briefing privacy issues because it just pertains to a

8    piece of information that, you know, you're not allowed to file

9    in Federal Court electronically anyway.  If there's other more

10   substantial redactions with particular justifications, we would

11   then be able to articulate our arguments.

12       And, similarly, in terms of the 51-1 documents that were,

13   I guess, produced to the defendant in redacted form, if I

14   understand correctly, again, sitting here today, we don't know

15   which of the redactions were the ones that always existed, which

16   were the ones that were introduced upon filing with the Court and

17   so forth, and so I -- at a minimum, we would say that that's

18   necessary so that, going forward as well, we understand which

19   redactions are justified by what justifications today and,

20   therefore, which justifications are subject to change.  So, for

21   example, if it is harm to an ongoing matter, then we can know,

22   when that ongoing matter is no longer ongoing, it's not going to

23   be harmed.

24       THE COURT:  Right.  Okay.

25       MR. FEDER:  And I think that's it.  Again, just sort of

1    the public interest here.  We -- I think both sides agree we're

2    in somewhat uncharted territory here.

3          THE COURT:  That's true, you are.  You are.

4          MR. FEDER:  And so --

5          THE COURT:  And you pulled me into it as well.

6          MR. FEDER:  Sure.  The -- so the public interest here is

7    profound.  And so, for example, again, things that would

8    sometimes be protected by the deliberative process privilege in

9    an ordinary case are precisely the decisions that people have a

10   profound interest in.

11         And one last point on the deliberative process privilege

12   is, in FOIA litigation you typically do have to identify at least

13   what the decision or policy that was being deliberated was so

14   that the Court and the FOIA applicant can assess whether that's a

15   valid exemption.  So, again, sort of a blanket deliberative

16   process justification makes it difficult for us to assess the

17   merits of that and make any arguments either today or going

18   forward.

19         THE COURT:  You raise some very good points, counsel, and

20   maybe the approach, since you pulled me into this, into the

21   uncharted waters, right, maybe the approach should be for the

22   Court to give you an opportunity to send a proposed order and

23   tell me precisely what you want and let the Court consider that.

24   Of course, I want to give the government an opportunity to

25   respond to your points, but --

1        MR. FEDER:  We'd be happy to do that.

2        THE COURT:  -- your points are well taken.

3        MR. FEDER:  And, obviously, we'd be happy to confer with

4   the government on and agreed order, if that's possible.

5        THE COURT:  Sure, absolutely.

6        MR. FEDER:  You know, again, obviously there are certain

7   points at the end of the day, from the perspective of the public

8   and press, we would want everything to be exposed to the sunshine

9   and public comment, and obviously the government will not agree

10  on that point sitting here today, but I think we can confer and

11  reach --

12       THE COURT:  -- sure --

13       MR. FEDER:  -- reach an agreement.

14       THE COURT:  That would be great, if you can reach a

15  proposed consent order, perfect; if not, then maybe what I should

16  do, and I'll certainly give government counsel a chance to

17  respond today, but maybe also what the Court should do is afford

18  the government an opportunity to send a counter-proposed order

19  and set forth its bases.

20       MR. FEDER:  We're comfortable with that.  And again, I

21  mean, we are, of course, happy to confer with the government on

22  this, but from our perspective, really it's sort of two issues.

23  There's what's redacted today and the degree to which that's

24  justified, but also the process going forward.

25       THE COURT:  Sure, sure.

1         MR. FEDER:  Because, again, this is one where things

2    really are changing all the time for any number of reasons.

3    Certainly, the closure of the Special Counsel's investigation and

4    the release of the report was kind of the big event that would

5    change the circumstances, and we do appreciate the government and

6    the Court's response to that by unredacting things, but,

7    obviously, various other things will also continue to change.

8         THE COURT:  Sure.  Would you like to address counsel's

9    points?

10        MR. VAN GRACK:  Only briefly, Your Honor, which is, one,

11   sort of the references to the redactions made in the Mueller

12   report.  That was pursuant to FOIA, and those were FOIA

13   redactions, and this is a deliberative process.  But the other

14   thing is sort of a request that the Washington Post just made.  I

15   thought that's what I just did, and I'm happy to clarify that

16   point.  But, as it stands right now, again, there are three

17   documents that I had referred to --

18        THE COURT:  You don't have to repeat yourself.

19        MR. VAN GRACK:  No, no, but the point is, to the extent

20   there needs to be greater clarity, the government's happy to

21   provide it, because it sounds like there's a need for it, which

22   is that there are three documents at issue.  One of them is the

23   addendum to the government's sentencing memo.  The only

24   redactions there, the only bases are the harm to ongoing

25   investigations.  Any redacted box, that is the basis for it for

1    that document.  The second document was the Flynn 302.  As the

2    government represented, there's a date of birth and there's a

3    name redacted from that.

4            THE COURT:  Right.

5            MR. VAN GRACK:  And I think the Washington Post said,

6    Well, if that's the case, they're no longer concerned about that

7    document, but those are the redactions on that document.

8            The final one is the Pete Strzok 302.  There were some

9    names of individuals, three individuals, who were redacted in

10   that document, and there are two paragraphs in that document that

11   are redacted for purposes of the deliberative process privilege

12   that we referred to.  So that's -- those are the three documents.

13   Those are the bases for each of those documents.

14           THE COURT:  All right.  Thank you, counsel.

15           MR. VAN GRACK:  Thank you.

16           THE COURT:  Excuse me one second.

17           (Brief pause in proceedings.)

18           THE COURT:  All right.  This has been extremely helpful.

19   I'm sorry, Ms. Powell, do you want to say anything or put

20   anything on the record?

21           MS. POWELL:  No.

22           THE COURT:  You sure?  This has been extremely helpful.

23   Thank you, everyone.  I'm going to take these issues under

24   advisement right now.  Let me think about whether I need a

25   proposed order or not.  Of course, I still encourage the parties

1  to continue to talk, and you've made some progress, and that's

2  good, because oftentimes, unfortunately, attorneys can't talk

3  among themselves and that's really unfortunate, but that's not

4  the case here.  But thank you.  This has been extremely helpful.

5       I don't have any other questions at this point.  I

6  recognize the profound interest that the public has in this case.

7  Everything I've written over the years says that I know that

8  interest is profound, so I'm not going to lose track of the

9  issues raised.  I do want to give some thought -- I'm not going

10 to issue any rulings from the bench today, but I will take it

11 under advisement, and I assure you that the case will not get

12 lost.  It's on my radar screen.  Thank you all.  And I'll see

13 Ms. Powell, et al., at 12:30.  There's no need to stand.  Thank

14 you.  The Court is adjourned.  Thank you.

15      (Proceedings adjourned at 11:55 a.m.)

16

**C E R T I F I C A T E**

17

18          I, Scott L. Wallace, RDR-CRR, certify that
        the foregoing is a correct transcript from the record of
19      proceedings in the above-entitled matter.

20

        /s/ Scott L. Wallace                6/27/19
21      ----------------------------        ----------------
        **Scott L. Wallace, RDR, CRR            Date**
22        **Official Court Reporter**

23

24

25

## #

**#300** [1] - 2:12

## /

**/s** [1] - 33:20

## 1

**1** [1] - 24:10
**11:00** [1] - 1:6
**11:13** [1] - 3:2
**11:55** [1] - 33:15
**12:30** [1] - 16:16; 33:13
**19-051** [2] - 1:5; 3:4
**1919** [2] - 1:14, 19
**19th** [1] - 12:18

## 2

**20001** [1] - 2:23
**20006** [2] - 1:15, 20
**2017** [4] - 12:18; 13:1, 22; 14:4
**2019** [2] - 1:6; 3:1
**202** [6] - 1:16, 21; 2:5, 9
**20530** [2] - 2:4, 9
**214)707-1775** [1] - 2:13
**22314** [1] - 2:16
**24** [2] - 1:6; 3:1
**240-3489** [1] - 2:20
**24th** [3] - 13:1, 22; 14:4
**252-6920** [1] - 2:9
**2911** [1] - 2:12

## 3

**300** [1] - 2:15
**302** [15] - 12:23; 13:2, 21-22; 14:16; 18:13; 19:12; 21:2, 14, 16; 32:1, 8
**302s** [1] - 21:25
**32163** [1] - 2:19
**352** [2] - 2:20
**3658** [1] - 2:19
**386** [1] - 23:12
**399-0531** [1] - 2:20
**3d** [1] - 23:12

## 4

**478** [1] - 24:10
**4th** [1] - 23:6

## 5

**51-1** [5] - 14:14, 18, 23, 25; 28:12
**555** [1] - 2:8
**567** [1] - 23:12

## 6

**6/27/19** [1] - 33:20
**616-0800** [1] - 2:5
**6503** [1] - 2:23

## 7

**703** [1] - 2:16
**717** [1] - 2:15
**75219** [1] - 2:12

## 8

**800** [2] - 1:15, 20
**85** [1] - 14:3
**888-1943** [1] - 2:16

## 9

**90** [9] - 7:1, 6; 11:2, 5, 10, 12; 16:17, 23
**950** [1] - 2:4
**973-4224** [1] - 1:21
**973-4273** [1] - 1:16
**973-4499** [2] - 1:16, 21

## A

**a.m** [3] - 1:6; 3:2; 33:15
**ability** [3] - 20:24; 25:4, 20
**able** [6] - 4:10, 20; 8:21; 21:6; 28:2, 11
**above-entitled** [1] - 33:19
**absolutely** [1] - 30:5
**accept** [1] - 26:8
**accepts** [2] - 25:7, 18
**access** [4] - 4:17; 24:14; 26:13, 17
**account** [2] - 23:4; 27:2
**accurate** [1] - 11:19
**acknowledge** [1] - 26:11
**acknowledging** [1] - 25:9
**Action** [1] - 1:4
**add** [2] - 15:22; 17:13
**addendum** [7] - 12:8; 13:20; 19:2, 5, 10; 31:23
**addition** [2] - 16:1; 22:4
**additional** [2] - 14:3; 23:14
**address** [8] - 4:3; 5:10; 10:25; 18:4, 12, 14; 24:5; 31:8

**addressed** [2] - 13:15; 17:17
**addresses** [1] - 5:21
**adjourned** [2] - 33:14
**administration** [1] - 19:18
**admitted** [1] - 3:19
**adverse** [1] - 8:9
**advisement** [2] - 32:24; 33:11
**affect** [1] - 10:6
**affected** [1] - 23:10
**afford** [2] - 23:13; 30:17
**afternoon** [1] - 6:19
**agencies** [1] - 11:9
**agency** [1] - 13:25
**agent** [1] - 27:6
**agents** [1] - 27:11
**ago** [1] - 20:9
**agree** [6] - 9:19; 13:18, 24; 14:1; 29:1; 30:9
**agreed** [2] - 9:2; 30:4
**agreement** [6] - 4:7; 5:9; 8:21; 9:1, 3; 30:13
**agreements** [1] - 4:10
**ahead** [1] - 7:3
**aided** [2] - 2:25
**aim** [1] - 27:6
**al** [1] - 33:13
**Alexandria** [1] - 2:16
**alive** [1] - 4:6
**allow** [1] - 8:17
**allowed** [1] - 28:8
**alluded** [2] - 24:21; 26:22
**alluding** [1] - 18:6
**almost** [1] - 26:10
**Amendment** [8] - 4:5, 16; 5:1; 26:12, 16, 20
**AMERICA** [1] - 1:7
**America** [1] - 3:5
**amount** [1] - 6:11
**analogous** [1] - 19:21
**answer** [4] - 7:23; 15:14, 17; 17:15
**answers** [1] - 10:21
**anyway** [2] - 13:15; 28:9
**APPEARANCES** [2] - 1:12; 2:1
**applicant** [1] - 29:14
**Application** [1] - 3:4
**APPLICATION** [1] - 1:4
**applies** [1] - 26:17
**appreciate** [6] - 4:2, 15; 14:8; 17:25; 18:2; 31:5
**approach** [2] - 29:20
**appropriate** [2] - 6:12; 7:25
**areas** [5] - 4:6; 8:6; 10:20; 25:13
**argument** [1] - 23:22
**arguments** [3] - 27:16; 28:11; 29:17
**articulate** [1] - 28:11
**articulating** [1] - 17:21
**aspects** [3] - 12:15; 15:5; 19:6
**assert** [1] - 23:7
**asserted** [2] - 24:6; 27:21

**assess** [2] - 29:14, 16
**assessment** [1] - 23:25
**Assistant** [2] - 2:2, 6
**associated** [4] - 20:4, 9, 14; 25:4
**assume** [2] - 7:5, 11
**assuming** [2] - 5:25; 24:5
**assure** [1] - 33:11
**attached** [1] - 12:19
**attaches** [1] - 24:14
**attention** [1] - 4:16
**attorney** [1] - 6:2
**Attorney** [2] - 2:2, 7
**ATTORNEY'S** [1] - 2:7
**attorneys** [5] - 4:2; 7:6; 17:1; 19:5; 33:2
**August** [1] - 7:10
**authority** [3] - 18:23; 21:5
**available** [2] - 11:7; 15:1
**Avenue** [3] - 1:14, 19; 2:4
**aware** [1] - 22:21

## B

**balancing** [1] - 19:24
**bar** [2] - 26:13; 27:24
**based** [3] - 5:5; 21:3; 24:11
**bases** [3] - 30:19; 31:24; 32:13
**basis** [6] - 20:10; 21:13, 18; 27:17, 22; 31:25
**became** [1] - 22:13
**become** [2] - 8:6; 11:7
**becomes** [1] - 24:24
**BEFORE** [1] - 1:10
**beginning** [1] - 9:14
**behalf** [4] - 3:13, 18; 4:15; 5:15
**behind** [1] - 4:23
**belief** [1] - 22:9
**believes** [2] - 17:22; 22:6
**bench** [1] - 33:10
**best** [1] - 10:22
**better** [1] - 6:23
**between** [3] - 8:13; 13:19; 19:23
**big** [1] - 31:4
**Binnall** [2] - 2:14; 3:17
**BINNALL** [2] - 2:14; 3:17
**birth** [6] - 13:3, 24-25; 19:14; 28:5; 32:2
**black** [1] - 27:24
**blanket** [1] - 29:15
**Blvd** [1] - 2:12
**box** [1] - 31:25
**Brady** [3] - 14:21; 15:13; 22:7
**Brandon** [2] - 2:2; 3:12
**brandon.van.grack@usdoj.gov** [1] - 2:5
**Brief** [1] - 32:17
**brief** [1] - 6:4
**briefed** [2] - 4:19; 10:3

**briefing** [2] - 16:7; 28:7
**briefly** [1] - 31:10

## C

**calculate** [1] - 11:14
**calendar** [1] - 8:16
**California** [1] - 24:9
**campaign** [1] - 19:18
**candid** [1] - 25:21
**Case** [1] - 3:4
**case** [31] - 6:10, 17-18, 21; 7:3, 9; 8:5; 11:25; 15:13, 16; 16:1, 16; 19:19; 20:7; 21:6; 22:15, 21; 23:11, 17; 24:7; 26:14, 17, 21; 29:9; 32:6; 33:4, 6, 11
**cases** [2] - 6:6; 27:9
**causes** [1] - 23:22
**certain** [2] - 4:3; 30:6
**certainly** [12] - 6:21; 7:25; 10:8; 23:16; 24:21; 26:9; 27:1, 6, 8; 28:3; 30:16; 31:3
**certify** [1] - 33:18
**challenging** [1] - 13:9
**chance** [2] - 26:1; 30:16
**change** [5] - 5:8; 8:19; 28:20; 31:5, 7
**changed** [2] - 5:11; 6:14
**changing** [1] - 31:2
**charges** [2] - 21:20; 23:25
**charging** [1] - 26:23
**Chief** [2] - 8:22; 14:5
**chilling** [5] - 22:22, 24; 23:1; 24:1; 25:20
**Circuit** [2] - 23:6, 17
**circumstance** [1] - 21:25
**circumstances** [6] - 5:6; 6:13; 8:18; 21:7, 10; 31:5
**clarification** [1] - 24:16
**clarify** [5] - 13:13, 17; 14:9; 27:20; 31:15
**clarifying** [1] - 12:1
**clarity** [1] - 31:20
**classification** [1] - 17:14
**clear** [3] - 5:17; 6:12; 26:16
**clearance** [1] - 17:10
**clearly** [1] - 14:6
**CLERK** [1] - 3:3
**client** [3] - 6:23; 16:17
**closure** [2] - 24:12; 31:3
**coding** [1] - 14:1
**Cohen** [1] - 6:5
**colleague** [1] - 3:10
**COLUMBIA** [2] - 1:2; 2:8
**comfort** [1] - 25:23
**comfortable** [3] - 11:13; 25:21; 30:20
**comment** [1] - 30:9
**commentary** [1] - 15:12
**committed** [1] - 21:24
**company** [1] - 24:9
**Company** [1] - 3:5

**COMPANY** [1] - 1:4
**compelling** [9] - 5:25; 7:15, 17, 19; 17:22; 18:5, 18; 24:6; 27:3
**complaints** [1] - 15:20
**complying** [1] - 22:7
**computer** [1] - 2:25
**computer-aided** [1] - 2:25
**concern** [5] - 11:10; 19:12; 22:18; 25:13, 25
**concerned** [3] - 23:17; 24:3; 32:6
**concerns** [3] - 19:2; 20:6; 21:1
**conclude** [1] - 8:8
**concluded** [1] - 20:8
**conduct** [3] - 20:24; 23:25; 24:1
**conducted** [6] - 19:14, 19; 20:20; 21:15, 19
**conducting** [1] - 22:25
**confer** [4] - 9:19; 30:3, 10, 21
**conferred** [1] - 11:2
**conferring** [2] - 4:19; 5:2
**confusion** [1] - 27:13
**conglomerate** [1] - 8:24
**consent** [1] - 30:15
**Conservation** [1] - 2:19
**consider** [1] - 29:23
**consideration** [1] - 23:15
**consistent** [1] - 5:1
**constantly** [1] - 4:17
**Cont** [1] - 2:1
**contain** [1] - 21:25
**contains** [1] - 14:24
**context** [3] - 19:21; 26:10
**contexts** [1] - 19:21
**continue** [4] - 20:9; 25:5; 31:7; 33:1
**continued** [1] - 5:7
**contrary** [1] - 26:1
**cooperation** [2] - 12:9; 19:4
**correct** [9] - 5:16; 6:20; 8:20; 10:8; 13:21; 16:16; 17:2; 33:18
**correctly** [1] - 28:14
**Counsel** [1] - 12:12
**counsel** [20] - 3:13, 25; 4:11; 6:22; 10:24; 11:2; 12:20; 14:19, 25; 15:2, 6-7; 17:12, 19; 18:4; 22:12; 26:4; 29:19; 30:16; 32:14
**Counsel's** [4] - 2:3; 20:8; 21:23; 31:3
**counsel's** [1] - 31:8
**counter** [1] - 30:18
**counter-proposed** [1] - 30:18
**County** [1] - 24:10
**couple** [4] - 4:1; 7:13; 9:13; 13:17; 14:6; 26:6
**course** [4] - 26:19; 29:24; 30:21; 32:25
**Court** [39] - 2:22; 4:24; 5:7; 6:8, 15, 24; 7:6, 12-13; 8:1; 9:3; 11:3, 13, 15; 12:1, 11; 13:11, 16; 15:13; 16:5, 8; 22:20; 23:9, 13; 24:8-10, 21; 26:25; 28:9, 16; 29:14, 22-23; 30:17; 33:14, 22
**Court's** [6] - 13:8; 14:21; 17:24; 22:7;

23:15; 31:6
**Courthouse** [1] - 2:23
**courtroom** [2] - 4:6; 18:9
**COURTROOM** - 3:3
**courts** [1] - 20:12
**Covington** [1] - 15:25
**create** [1] - 27:20
**credit** [1] - 17:25
**Creek** [1] - 2:12
**crimes** [2] - 21:24; 26:18
**criminal** [3] - 6:18; 8:5; 21:22
**critical** [1] - 25:19
**CRR** [3] - 2:22; 33:18, 21
**current** [1] - 18:5
**Curtis** [2] - 2:6; 3:14
**CURTIS** [1] - 3:15

### D

**D.C** [2] - 1:7; 2:23
**daily** [1] - 20:10
**Dallas** [1] - 2:12
**Date** [1] - 33:21
**date** [17] - 5:24; 6:2, 5, 7; 7:1, 6; 8:22;
9:2; 11:1; 13:3, 25; 16:22; 19:14; 28:5;
32:2
**DAVIS** [2] - 1:14, 19
**Davis** [1] - 3:9
**days** [9] - 7:1, 6; 11:2, 5, 10, 12; 16:17,
23
**DC** [4] - 1:15, 20; 2:4, 9
**debate** [1] - 27:1
**debating** [1] - 20:12
**Deborah** [2] - 2:6; 3:14
**deborah.curtis@usdoj.gov** [1] - 2:10
**decision** [2] - 26:3; 29:13
**decision-making** [1] - 26:3
**decisions** [4] - 23:24; 25:24; 26:23;
29:9
**defendant** [8] - 6:11, 15; 7:25; 12:19;
13:4; 14:14; 22:14; 28:13
**Defendant** [2] - 1:8; 2:2
**defendant's** [3] - 13:24; 19:4, 14
**defense** [7] - 12:20; 14:18, 25; 15:2, 5,
7; 22:12
**defer** [1] - 11:13
**deferring** [2] - 13:10
**degree** [1] - 30:23
**delay** [1] - 17:13
**deliberated** [1] - 29:13
**deliberations** [1] - 25:20
**deliberative** [20] - 18:20; 20:25; 21:4,
11-12; 22:1, 6, 20; 23:1, 21, 23; 25:14,
17; 26:7; 29:8, 11, 15; 31:13; 32:11
**Department** [1] - 23:11
**DEPARTMENT** [1] - 2:3
**Deputy** [1] - 14:5
**described** [1] - 13:7
**describes** [2] - 12:9; 19:3

**descriptions** [1] - 11:19
**determination** [2] - 4:24; 11:9
**determine** [1] - 24:10
**determines** [1] - 5:7
**determining** [1] - 27:3
**developments** [1] - 17:23
**different** [4] - 20:10; 24:17
**differently** [1] - 16:10
**difficult** [2] - 10:21; 29:16
**diligence** [1] - 22:21
**disagree** [1] - 25:24
**disagreement** [1] - 4:7
**disclosed** [1] - 16:7
**disclosing** [1] - 23:2
**disclosure** [1] - 4:3
**discovery** [5] - 14:19; 21:11, 13; 22:5;
26:11
**discrepancy** [1] - 13:19
**discussed** [1] - 20:15
**discussing** [1] - 25:16
**discussion** [2] - 5:24; 15:22
**discussions** [2] - 4:18; 25:22
**dispute** [5] - 12:6; 14:7; 21:9; 26:11
**disputes** [1] - 11:20
**dissent** [1] - 25:24
**dissipate** [1] - 24:22
**District** [2] - 6:6; 23:9
**DISTRICT** [4] - 1:1, 11; 2:8
**Docket** [1] - 14:3
**docket** [2] - 5:17; 15:2
**document** [33] - 5:22; 6:6; 12:10, 17,
19-20, 22-23, 25; 13:2; 14:2, 4, 7, 13,
17, 23, 25; 15:1, 4-6; 19:3; 21:1; 22:13;
27:17; 28:4; 32:1, 7, 10
**document-by-document** [1] - 27:17
**documented** [1] - 22:17
**documents** [23] - 5:18; 10:2, 11;
11:23; 12:4, 16; 13:18, 20; 14:12, 14,
18, 20-21, 24; 18:14, 18; 27:18; 28:12;
31:17, 22; 32:12
**DOJ** [4] - 22:2, 25; 23:24; 25:21
**done** [3] - 17:21; 18:6; 22:21
**down** [1] - 27:8
**drawn** [2] - 19:23; 20:5
**drives** [1] - 17:4
**due** [1] - 22:21
**during** [1] - 17:8

### E

**ECF** [1] - 14:13
**effect** [8] - 22:22, 24; 23:2, 5; 24:1;
25:4, 20
**efforts** [2] - 4:2; 18:3
**eight** [1] - 10:15
**either** [3] - 10:2; 19:6; 29:17
**electronically** [1] - 28:9
**Email** [6] - 1:17, 22; 2:5, 10, 17, 21
**EMMET** [1] - 1:10

**employee** [1] - 25:6
**employees** [5] - 19:19, 23; 22:25;
25:21
**encourage** [1] - 32:25
**end** [3] - 8:14; 24:13; 30:7
**Enterprise** [1] - 24:9
**entirely** [1] - 25:22
**entirety** [1] - 14:20
**entities** [2] - 8:25; 9:1
**entitled** [1] - 33:19
**environment** [1] - 25:23
**Eric** [2] - 1:13; 3:8
**ericfeder@dwt.com** [1] - 1:17
**erring** [1] - 33:2
**Esq** [5] - 1:13, 18; 2:11, 14, 18
**essential** [1] - 24:12
**established** [1] - 26:9
**et** [1] - 33:13
**event** [1] - 31:4
**events** [1] - 8:18
**evidence** [1] - 17:11
**exactly** [1] - 13:6
**example** [7] - 8:6, 11; 21:17; 26:22;
28:4, 21; 29:7
**exceeds** [1] - 24:14
**exclusively** [1] - 26:10
**excuse** [1] - 32:16
**executive** [1] - 26:18
**Executive** [4] - 19:15; 20:1; 25:9
**exemption** [1] - 29:15
**exist** [2] - 8:3; 19:10
**existed** [1] - 28:15
**exists** [2] - 25:23; 26:8
**expectation** [2] - 11:11; 25:12
**expecting** [1] - 20:3
**explained** [1] - 23:6
**expose** [3] - 22:9; 25:12; 27:11
**exposed** [2] - 20:4; 30:8
**exposes** [1] - 23:23
**extent** [5] - 4:24; 5:4, 7; 27:5; 31:19
**extreme** [1] - 26:25
**extremely** [4] - 27:10; 32:18, 22; 33:4

### F

**fact** [3] - 8:12; 9:18; 22:4
**fair** [1] - 7:20
**fairly** [2] - 6:10; 26:7
**fall** [1] - 9:11
**fall/winter** [1] - 9:14
**far** [2] - 7:3; 27:5
**Fax** [5] - 1:16, 21; 2:20
**FBI** [11] - 12:17; 13:1; 14:5; 20:18,
21-22; 22:2, 25; 23:24; 25:5, 21
**Fed** [1] - 23:12
**Feder** [1] - 1:13; 3:8
**FEDER** [28] - 3:8; 4:13, 15; 5:16; 6:4,
20; 7:22; 8:23; 9:7, 9, 13, 17, 24; 10:8,
15, 18; 13:13, 17; 26:6; 28:25; 29:4, 6;

30:1, 3, 6, 13, 20; 31:1
**Federal** [1] - 28:9
**few** [1] - 17:20
**fight** [1] - 18:2
**file** [2] - 16:2; 28:8
**filed** [6] - 10:2; 11:21; 14:2, 13; 15:25; 17:24
**filing** [2] - 12:19; 28:16
**filings** [3] - 11:25; 12:24; 13:8
**final** [3] - 20:17, 25; 32:8
**finally** [1] - 25:14
**findings** [1] - 24:11
**FIRM** [1] - 2:18
**first** [6] - 4:1, 8; 10:25; 11:18; 18:25; 23:18
**First** [8] - 4:4, 16; 5:1; 26:12, 16, 20
**FL** [1] - 2:19
**Flynn** [10] - 2:11; 3:18; 4:9; 5:14; 13:1, 22; 18:13; 19:12; 32:1
**Flynn's** [2] - 12:9; 17:1
**FOIA** [6] - 19:21; 26:10; 29:12, 14; 31:12
**folks** [1] - 25:24
**food** [1] - 18:1
**FOR** [2] - 1:2; 2:7
**foregoing** [1] - 33:18
**form** [3] - 10:3; 14:3; 28:13
**forms** [1] - 19:3
**forth** [4] - 5:13; 24:8; 28:17; 30:19
**forums** [1] - 20:10
**forward** [5] - 3:6; 5:10; 28:18; 29:18; 30:24
**foundation** [1] - 24:2
**Fourth** [2] - 2:8; 23:17
**Friday** [2] - 10:5, 11
**fully** [1] - 10:3
**future** [1] - 20:24

## G

**General** [1] - 3:18
**general** [1] - 23:8
**government** [44] - 7:13; 8:1, 21; 9:2; 11:8, 12, 16, 21; 12:11; 13:11, 22; 14:18; 15:3, 8; 17:20, 22, 25; 18:3, 15; 19:8, 19, 22, 25; 21:3, 9; 22:6, 23; 23:13, 19; 24:2, 5; 25:6, 18; 27:9, 12; 29:24; 30:4, 9, 16, 18, 21; 31:5; 32:2
**government's** [14] - 6:2; 11:11; 12:4, 8; 13:6, 8; 16:1; 17:21; 19:2; 22:14, 18; 24:5; 31:20, 23
**GRACK** [19] - 3:12; 10:25; 11:18; 12:3; 14:8, 12; 18:10, 12, 17, 25; 21:7; 23:16, 21; 24:15, 19; 31:10, 19; 32:5, 15
**Grack** [4] - 2:2; 3:13; 26:22; 27:14
**Grand** [1] - 27:25
**granted** [1] - 12:12
**granting** [1] - 3:22
**grants** [1] - 7:6

**great** [4] - 13:12; 17:21; 26:21; 30:14
**greater** [2] - 24:16; 31:20
**grounding** [2] - 11:5, 11
**group** [1] - 20:22
**guess** [3] - 4:8; 5:4; 28:13

## H

**hac** [1] - 3:23
**handling** [1] - 19:5
**Handman** [2] - 1:18; 3:10
**happy** [7] - 6:9; 23:16; 30:1, 3, 21; 31:15, 20
**harassed** [1] - 20:10
**harassment** [4] - 20:6, 16; 25:12; 27:12
**hard** [1] - 17:3
**harm** [9] - 18:18; 19:1, 8; 20:23; 23:17, 22; 27:25; 28:21; 31:24
**harmed** [1] - 28:23
**HARVEY** [1] - 2:14
**hear** [2] - 6:1; 18:8
**heard** [1] - 10:18
**HEARING** [1] - 1:10
**hearing** [7] - 7:8; 9:11; 10:16; 11:6, 11; 17:8
**hearings** [5] - 9:14
**help** [2] - 27:19; 28:2
**helpful** [5] - 10:19; 27:14; 32:18, 22; 33:4
**heretofore** [1] - 27:11
**high** [4] - 19:23; 22:1; 26:14, 18
**high-level** [2] - 19:23; 22:1
**higher** [6] - 24:7, 12, 17, 22, 25; 25:15
**highlighting** [1] - 20:17
**hinging** [1] - 8:4
**hoc** [1] - 3:19
**Hodes** [2] - 2:18; 3:19
**HODES** [1] - 2:18
**Honor** [17] - 3:3, 8, 12, 15, 17; 4:13; 5:16; 14:8; 15:23; 16:19; 18:10, 25; 21:7; 23:17; 24:15; 26:6; 31:10
**Honor's** [1] - 4:16
**HONORABLE** [1] - 1:10
**Howell** [1] - 8:22
**hypothetical** [3] - 10:21; 20:7, 11
**hypothetically** [2] - 6:25; 7:5

## I

**identified** [3] - 18:13; 19:7; 20:21
**identify** [3] - 3:7; 21:9; 29:12
**identifying** [2] - 20:18, 23
**identities** [1] - 27:9
**impact** [3] - 8:9; 20:20; 26:2
**importance** [1] - 4:17
**important** [3] - 22:19; 23:4; 27:10
**IN** [1] - 1:3

**in-between** [1] - 8:13
**inclined** [1] - 16:5
**including** [1] - 4:9
**indeed** [2] - 5:6; 27:3
**individuals** [14] - 10:21; 18:7; 19:13, 15; 20:1, 9, 18; 21:17; 25:3, 25; 32:9
**inform** [1] - 7:13
**information** [37] - 5:13, 20; 7:20; 8:6, 8; 11:7, 22; 12:21; 13:9; 15:8; 16:6, 8; 17:10, 24; 18:3, 19; 19:8, 24; 21:3, 10, 13, 15; 22:8, 11, 16, 19, 23; 23:1, 3, 11, 22; 24:23; 27:4; 28:8
**integrity** [5] - 23:9; 24:20, 25; 25:16; 26:2
**interest** [17] - 5:25; 7:15; 19:1; 24:11, 13, 17; 25:2; 26:12, 15, 25; 27:2; 29:1, 6, 10; 33:6, 8
**Interested** [1] - 2:11
**interesting** [1] - 18:22
**interests** [17] - 4:16; 6:1; 7:18; 17:22; 18:5, 17-19; 19:11, 25; 24:6; 25:2, 6; 26:20; 27:3, 5
**interrelated** [1] - 6:17
**interview** [11] - 12:17, 25; 13:1; 21:15, 18-20; 23:25; 24:1
**interviewed** [2] - 21:18; 22:2
**interviews** [3] - 19:14; 20:19; 22:25
**introduced** [1] - 28:16
**investigation** [15] - 8:10; 12:13, 16; 19:20; 20:8, 19; 21:16, 22-23; 23:10, 23; 24:23; 25:22; 31:3
**investigations** [16] - 7:17; 8:5, 7; 12:15; 18:19; 19:1, 6-7, 9, 22; 23:18; 24:19; 25:1; 26:24; 31:25
**invite** [1] - 4:11
**invoked** [3] - 21:12; 26:13; 28:6
**involved** [3] - 9:6, 17; 20:8
**involving** [1] - 11:9
**issue** [11] - 5:4; 11:23; 14:17, 23; 15:4; 17:16; 18:14, 20; 26:12; 31:22; 33:10
**issued** [2] - 6:8; 15:13
**issues** [9] - 4:3, 22; 6:15; 20:12; 28:7; 30:22; 32:23; 33:9
**items** [1] - 19:5

## J

**Jackson** [6] - 9:6, 11, 19, 25; 10:4, 7
**January** [3] - 13:1, 21; 14:4
**jbinnall@harveybinnall.com** [1] - 2:17
**Jesse** [2] - 2:14; 3:17
**job** [3] - 17:21; 18:6; 25:10
**join** [1] - 3:25
**Judge** [7] - 8:22; 9:5, 11, 19, 25; 10:4, 7
**JUDGE** [1] - 1:11
**judicial** [2] - 15:1, 7
**July** [1] - 12:18

**June** [1] - 1:6
**JUNE** [1] - 3:1
**Jury** [1] - 28:1
**JUSTICE** [1] - 2:3
**justification** [2] - 27:18; 29:16
**justifications** [5] - 27:15, 21; 28:10, 19
**justified** [3] - 21:3; 28:19; 30:24
**justify** [1] - 5:7; 6:13; 27:3

## K

**keep** [2] - 7:15; 22:19
**kind** [1] - 31:4
**kinds** [1] - 5:19
**King** [1] - 2:15
**knowing** [2] - 21:18; 25:7
**knows** [1] - 4:4

## L

**label** [1] - 27:25
**Lang** [1] - 2:2
**last** [5] - 9:11; 10:5, 25; 18:21; 29:11
**late** [1] - 9:14
**Laura** [2] - 1:18; 3:10
**laurahandman@dwt.com** [1] - 1:22
**LAW** [1] - 2:18
**law** [2] - 22:15, 22
**least** [5] - 6:12; 16:19; 25:17; 29:12
**lectern** [1] - 3:6
**less** [1] - 27:16
**letters** [1] - 5:15
**level** [4] - 19:23; 22:1; 27:6
**lifted** [1] - 7:20
**light** [1] - 26:2
**likelihood** [1] - 6:24
**likely** [1] - 11:7
**limit** [1] - 11:22
**limited** [3] - 12:14, 22; 22:11
**line** [4] - 19:23; 20:5, 23; 25:11
**litigation** [1] - 29:12
**live** [1] - 14:7
**LLC** [2] - 1:4; 3:5
**LLP** [1] - 1:14, 19
**look** [2] - 5:10; 6:3
**looked** [1] - 13:25
**looking** [1] - 27:7
**lose** [1] - 33:8
**lost** [1] - 33:12
**low** [2] - 19:23; 27:6
**low-level** [2] - 19:23; 27:6

## M

**machine** [1] - 2:25
**magic** [1] - 8:16
**Manafort** [1] - 9:7

**material** [5] - 10:5, 9; 22:1, 5; 28:1
**materials** [1] - 17:2
**math** [1] - 11:3
**MATTER** [1] - 1:3
**matter** [7] - 3:4; 9:5, 10; 27:25; 28:21; 33:19
**matters** [3] - 7:14, 16; 8:22
**McCabe** [3] - 14:5, 16, 24
**mean** [1] - 30:21
**means** [1] - 8:7
**media** [4] - 8:24; 9:1; 20:11
**member** [1] - 25:9
**members** [3] - 19:15, 17; 20:18
**memo** [4] - 14:4, 24; 15:25; 31:23
**memorandum** [7] - 5:14, 19; 12:8; 13:20; 14:15; 19:2
**mentioned** [2] - 15:11, 17
**merits** [1] - 29:17
**Michael** [5] - 2:11; 6:5; 12:9; 13:1; 18:13
**microphone** [1] - 4:11
**mid** [2] - 7:7, 11
**mid-September** [2] - 7:7, 11
**mightily** [1] - 13:14
**mill** [1] - 26:17
**mind** [1] - 13:16
**minimum** [2] - 27:19; 28:17
**Miscellaneous** [1] - 3:3
**miscellaneous** [1] - 1:4
**misconduct** [1] - 19:22
**misdemeanor** [1] - 26:17
**misdemeanors** [1] - 26:18
**moment** [1] - 25:17
**months** [8] - 6:7, 14; 7:2; 8:12, 14, 17; 20:9
**moot** [1] - 10:8
**MORNING** [1] - 3:1
**morning** [9] - 3:8, 11-12, 15-17, 20
**most** [2] - 9:15; 26:17
**mostly** [1] - 14:5
**motion** [9] - 3:23; 10:3, 6, 10, 13; 11:21; 12:11; 13:24; 27:7
**MOTION** [1] - 1:10
**motions** [3] - 4:19; 10:1, 9
**movant's** [1] - 13:6
**moving** [1] - 7:10
**MR** [48] - 3:8, 12, 17; 4:13, 15; 5:16; 6:4, 20; 7:22; 8:23; 9:7, 9, 13, 17, 24; 10:8, 15, 18, 25; 11:18; 12:3; 13:13, 17; 14:8, 12; 18:10, 12, 17, 25; 21:7; 23:16, 21; 24:15, 19; 26:6; 28:25; 29:4, 6; 30:1, 3, 6, 13, 20; 31:1, 10, 19; 32:5, 15
**MS** [14] - 3:15, 21; 15:23, 25; 16:5, 12, 14, 19, 21, 24; 17:3, 6, 18; 32:21
**Mueller** [3] - 27:23; 31:11
**multiple** [2] - 8:24; 11:25
**must** [1] - 24:10

## N

**N.W** [2] - 1:14, 19
**name** [5] - 13:3, 15; 20:14; 32:3
**names** [3] - 13:14; 19:12, 17; 20:3; 27:6; 32:9
**narrow** [1] - 13:4
**narrowing** [1] - 11:19
**narrowly** [2] - 24:6, 12
**nature** [1] - 21:22
**necessarily** [3] - 20:21; 25:12; 27:11
**necessary** [3] - 8:2; 14:2; 28:18
**need** [5] - 7:4; 28:6; 31:21; 32:24; 33:13
**needs** [2] - 17:17; 31:20
**nevertheless** [1] - 18:15
**new** [2] - 6:22; 7:6
**next** [1] - 17:8
**nonetheless** [1] - 24:13
**nonsubstantive** [1] - 13:25
**normally** [4] - 21:11, 21; 22:1, 5
**nothing** [1] - 8:16
**number** [3] - 5:8; 7:23; 31:2
**numerous** [2] - 4:5; 11:9
**NW** [2] - 2:4, 8

## O

**objection** [1] - 11:5
**obviously** [11] - 4:22; 6:9; 8:16; 26:7, 24; 27:12, 16; 30:3, 6, 9; 31:7
**occur** [2] - 20:16; 21:21
**occurred** [4] - 12:18; 14:22; 15:15; 19:10
**occurs** [1] - 26:3
**October** [1] - 9:12
**OF** [7] - 1:2-4, 7, 10; 2:3, 8
**Office** [2] - 2:3; 20:8
**OFFICE** [1] - 2:7
**Office's** [1] - 12:13
**officer** [1] - 17:14
**Official** [2] - 2:22; 33:22
**officials** [3] - 22:1; 26:19; 27:9
**often** [2] - 19:22; 21:14
**oftentimes** [2] - 18:1; 33:2
**one** [25] - 5:11; 6:10, 15; 7:23; 8:15; 12:7, 16; 13:4; 14:12, 15; 15:10; 17:7; 18:21; 21:1; 23:20; 27:18; 29:11; 31:1, 10, 22; 32:8, 16
**ones** [2] - 28:15
**ongoing** [17] - 7:16; 8:5, 10; 18:19; 19:1, 9; 20:20; 23:18; 24:19, 23, 25; 27:25; 28:21; 31:24
**opportunity** [14] - 9; 16:6; 18:11; 23:14; 24:16; 29:22, 24; 30:18
**opposed** [2] - 13:9, 11
**OPR** [1] - 19:22
**order** [13] - 3:22; 6:8, 15; 13:9; 14:22;

15:13; 22:7, 11; 29:22; 30:4, 15, 18;
32:25
  **ordered** [2] - 9:19; 17:24
  **ordinary** [1] - 29:9
  **overriding** [1] - 24:11
  **own** [2] - 17:25; 27:8

## P

  **P.C** [1] - 2:11
  **page** [1] - 12:2
  **paragraphs** [2] - 21:2; 32:10
  **part** [13] - 8:25; 9:22; 13:23; 14:24;
15:6; 20:1, 5; 22:13, 17; 24:8; 25:10;
27:12
  **participate** [1] - 9:16
  **particular** [18] - 5:5; 6:10; 8:16; 11:5;
13:5, 19; 20:4, 7, 14, 22-23; 25:13;
26:23; 27:4, 17; 28:3, 10
  **particularly** [1] - 26:21
  **parties** [9] - 3:6; 4:9; 5:20; 7:9; 9:19,
25; 23:2; 32:25
  **Party** [1] - 2:11
  **pause** [1] - 32:17
  **pending** [3] - 10:4, 6, 13
  **Pennsylvania** [3] - 1:14, 19; 2:4
  **people** [4] - 5:14; 22:24; 27:7; 29:9
  **perfect** [1] - 30:15
  **performing** [1] - 27:10
  **perhaps** [2] - 11:1, 6
  **personal** [2] - 5:13, 20
  **persons** [1] - 20:11
  **perspective** [4] - 7:23; 14:7; 30:7, 22
  **pertaining** [1] - 12:14
  **pertains** [1] - 28:7
  **Pete** [6] - 12:23; 14:16; 21:1, 17; 32:8
  **Peter** [1] - 12:17
  **piece** [5] - 13:4, 11; 20:17, 25; 28:8
  **pieces** [1] - 7:10
  **piqued** [1] - 5:25
  **place** [4] - 7:15, 18; 9:4; 22:11
  **Plaintiff** [2] - 1:5, 13
  **played** [1] - 20:19
  **plea** [1] - 15:15
  **pleadings** [3] - 5:24; 17:1, 23
  **PLLC** [1] - 2:14
  **point** [20] - 4:21; 5:3, 5; 7:12; 8:18;
10:25; 11:18; 12:1; 16:11; 23:18, 20;
24:4, 22; 26:14; 27:10; 29:11; 30:10;
31:16, 19; 33:5
  **pointing** [1] - 11:20
  **points** [6] - 13:17; 29:19, 25; 30:2, 7;
31:9
  **pole** [1] - 27:8
  **Police** [1] - 23:12
  **policy** [1] - 29:13
  **portions** [1] - 12:10
  **position** [8] - 4:25; 7:14; 15:8; 16:1;
22:8, 15; 28:3

  **possession** [1] - 17:2
  **possible** [2] - 11:22; 30:4
  **POST** [1] - 1:4
  **Post** [18] - 3:5, 9; 4:15; 5:12; 8:20, 23,
25; 9:6, 10; 12:7; 14:13; 16:7; 18:13;
21:8; 23:12; 24:22; 31:14; 32:5
  **Post's** [1] - 19:16
  **potential** [6] - 20:20; 22:22, 24; 23:1,
5, 17
  **potentially** [2] - 20:23; 25:5
  **Powell** [5] - 2:11; 3:18; 15:22; 32:19;
33:13
  **POWELL** [14] - 2:11; 3:21; 15:23, 25;
16:5, 12, 14, 19, 21, 24; 17:3, 6, 18;
32:21
  **precisely** [4] - 25:15; 27:15; 29:9, 23
  **prepared** [1] - 6:23
  **present** [1] - 5:6
  **president's** [1] - 19:18
  **Press** [1] - 24:8
  **press** [1] - 30:8
  **primarily** [1] - 24:2
  **primary** [1] - 18:18
  **principle** [2] - 4:11; 23:8
  **privacy** [9] - 18:19; 19:11, 25; 25:2, 6;
27:5; 28:1, 6
  **private** [1] - 27:11
  **privilege** [15] - 18:21; 21:1, 4, 12;
22:20; 24:2; 25:15, 18-19; 26:7; 29:8,
11; 32:11
  **privileged** [1] - 23:3
  **pro** [2] - 3:19, 23
  **Proceedings** [2] - 2:25; 33:15
  **proceedings** [3] - 4:18; 32:17; 33:19
  **PROCEEDINGS** [1] - 1:10
  **process** [25] - 5:9; 9:22; 11:6, 15;
18:20; 20:25; 21:4, 12; 22:2, 20; 23:21,
24; 25:14, 16, 18; 26:7; 29:8, 11, 16;
30:24; 31:13; 32:11
  **produce** [2] - 21:13; 22:8
  **produced** [7] - 2:25; 15:19; 21:11;
22:5, 13, 17; 28:13
  **producing** [1] - 22:12
  **productively** [1] - 4:20
  **profound** [5] - 26:15; 29:7, 10; 33:6, 8
  **progress** [2] - 8:18; 33:1
  **prominent** [1] - 19:17
  **prompted** [1] - 10:10
  **proposed** [5] - 9:1; 29:22; 30:15, 18;
32:25
  **prospect** [1] - 18:20
  **protected** [1] - 29:8
  **protective** [1] - 22:10
  **provide** [5] - 16:8; 23:14; 25:24; 31:21
  **provided** [5] - 14:18; 15:5; 17:3; 21:15
  **provides** [1] - 25:23
  **providing** [2] - 23:8; 24:16
  **public** [25] - 8:7; 9:21; 12:1, 15-16;
15:3; 18:8; 19:6, 24; 22:10; 24:24; 25:7;

26:15, 20-21, 25; 27:2, 23; 29:1, 6;
30:7, 9; 33:6
  **publicly** [1] - 15:1
  **pulled** [2] - 29:5, 20
  **purposes** [1] - 32:11
  **pursuant** [1] - 31:12
  **put** [4] - 8:11; 18:24; 20:2; 32:19
  **putting** [1] - 25:8

## Q

  **qualified** [1] - 24:14
  **quality** [1] - 26:3
  **questioned** [1] - 13:7
  **questions** [6] - 4:12; 17:15, 20; 18:23;
21:19; 33:5
  **quickly** [1] - 26:7
  **quite** [3] - 6:12; 11:10; 26:14
  **quote** [5] - 23:7; 24:7, 11, 13
  **quote-unquote** [1] - 24:7

## R

  **radar** [1] - 33:12
  **raise** [3] - 17:13, 16; 29:19
  **raised** [2] - 18:15; 33:9
  **raises** [1] - 18:20
  **range** [1] - 26:19
  **RDR** [3] - 2:22; 33:18, 21
  **RDR-CRR** [1] - 33:18
  **reach** [6] - 4:10; 8:21; 9:3; 30:11, 13
  **reached** [2] - 5:9; 8:25
  **reading** [1] - 17:1
  **reality** [4] - 5:10; 8:2; 20:13, 15
  **really** [7] - 5:9; 11:13; 17:25; 18:2;
30:22; 31:2; 33:3
  **reason** [3] - 20:5; 22:15, 18
  **reasonably** [1] - 23:10
  **reasons** [12] - 5:8; 7:17, 19; 8:3, 13;
14:22; 15:12; 23:8, 14; 26:9, 22; 31:2
  **received** [1] - 14:25
  **recognize** [1] - 33:6
  **record** [9] - 3:7; 13:7; 15:2, 7; 18:8;
27:20; 32:20; 33:18
  **recorded** [2] - 21:14; 22:5
  **redact** [1] - 14:13
  **redacted** [12] - 4:22; 10:3; 11:23; 13:3;
15:6; 19:17; 28:13; 30:23; 31:25; 32:3,
9, 11
  **redaction** [6] - 27:15, 22, 24; 28:4, 6
  **redaction-by-redaction** [1] - 27:22
  **redactions** [24] - 4:23, 25; 5:5, 19; 8:4;
9:20; 11:24; 12:6, 14, 22; 14:6, 20, 22;
18:6; 19:4, 9; 28:3, 10, 15, 19; 31:11,
13, 24; 32:7
  **refer** [2] - 12:23; 13:2
  **reference** [1] - 7:2
  **referenced** [1] - 14:15

**references** [2] - 12:12; 31:11
**referred** [2] - 31:17; 32:12
**referring** [1] - 10:20
**regard** [1] - 9:7
**regarding** [1] - 5:14
**related** [2] - 10:9; 21:22
**release** [6] - 10:5, 9; 18:3; 23:10, 22; 31:4
**released** [5] - 9:20; 10:11; 17:24; 18:2; 19:8
**releasing** [1] - 22:22
**relied** [4] - 14:14, 17; 22:14
**rely** [1] - 15:7
**relying** [2] - 15:2, 9
**remain** [5] - 7:18; 8:4; 12:14; 13:20; 19:4
**remaining** [5] - 4:22; 11:24; 13:18; 18:5, 17
**remains** [1] - 13:3
**repeat** [2] - 13:14; 31:18
**reply** [4] - 6:4; 13:6; 19:16; 21:8
**report** [10] - 6:7; 7:10; 9:2; 11:1; 12:17, 25; 27:23; 31:4, 12
**reported** [1] - 2:25
**Reporter** [3] - 2:22; 33:22
**represent** [3] - 6:23; 9:9; 16:18
**representation** [1] - 11:2
**represented** [1] - 32:2
**representing** [1] - 8:23
**request** [1] - 31:14
**requested** [1] - 14:12
**required** [1] - 9:25
**reserve** [1] - 24:12
**resolve** [1] - 4:3
**respect** [11] - 7:14, 20; 8:21; 18:5; 19:1, 10-11; 24:19; 25:2, 14; 27:17
**respond** [3] - 4:12; 29:25; 30:17
**response** [3] - 13:6; 26:5; 31:6
**responses** [1] - 7:4
**responsive** [1] - 14:21
**revealing** [1] - 8:8
**review** [3] - 11:8, 22; 16:6
**ripe** [1] - 11:4
**Riverside** [1] - 24:10
**robust** [1] - 27:20
**role** [2] - 20:19; 25:7
**Room** [1] - 2:23
**Rose** [1] - 1:18
**rulings** [1] - 33:10
**run** [1] - 26:17
**run-of-the-mill** [1] - 26:17

**S**

**sake** [1] - 27:8
**scenario** [1] - 13:16
**scenarios** [2] - 10:22; 18:7
**scheduled** [2] - 7:11; 10:17
**scope** [2] - 13:5; 21:23

**Scott** [4] - 2:22; 33:18, 20
**screen** [1] - 33:12
**seal** [9] - 7:15, 18-19; 10:2; 15:20; 16:2; 21:3; 22:19; 23:14
**sealed** [7] - 7:15; 8:9; 9:12, 18; 13:10; 22:16
**sealing** [9] - 5:5, 7; 6:1, 13; 8:2, 13; 22:16; 27:4
**search** [1] - 6:5
**second** [6] - 5:4; 12:17; 18:24; 24:7; 32:1, 16
**security** [2] - 17:9, 14
**see** [2] - 5:18; 33:12
**seeing** [1] - 26:1
**seek** [1] - 6:22
**seeking** [5] - 5:12, 21; 10:12; 12:7; 16:17
**send** [2] - 29:22; 30:18
**Senior** [4] - 19:15; 20:1; 25:9
**sense** [2] - 6:8; 7:12
**sentenced** [3] - 6:11, 16; 7:25
**sentencing** [14] - 5:14, 19; 7:11; 8:11, 15; 11:4; 12:8; 13:20; 14:15; 15:8; 16:22; 19:2; 31:23
**September** [2] - 7:7, 11
**series** [1] - 4:12
**servant** [1] - 25:7
**serve** [1] - 24:13
**Service** [4] - 19:16; 20:1; 25:9
**SESSION** [1] - 3:1
**set** [5] - 5:13, 17; 6:7; 24:8; 30:19
**short** [1] - 6:11
**shorthand** [1] - 2:25
**shortly** [1] - 4:3
**sic** [1] - 19:13
**side** [2] - 22:12; 23:2
**sides** [3] - 7:21; 27:1; 29:1
**Sidney** [2] - 2:11; 3:18
**SIDNEY** [1] - 2:11
**signed** [1] - 3:22
**similar** [1] - 11:2
**similarly** [1] - 28:12
**simple** [3] - 15:13, 16, 21
**simply** [3] - 13:10; 23:7; 25:11
**single** [1] - 13:3
**sit** [4] - 3:23
**sitting** [2] - 28:14; 30:10
**situated** [1] - 16:10
**situation** [1] - 20:6
**six** [2] - 8:11; 10:15
**sometimes** [4] - 17:13; 20:12; 27:18; 29:8
**somewhat** [2] - 6:17; 29:2
**sooner** [4] - 6:9, 16; 8:15; 17:17
**sorry** [2] - 10:20; 32:19
**sort** [13] - 11:9; 13:25; 14:7; 16:7; 19:24; 21:20; 25:7; 27:21; 28:25; 29:15; 30:22; 31:11, 14
**sounds** [3] - 11:3; 22:20; 31:21

**Southern** [1] - 6:6
**Special** [5] - 2:3; 12:12; 20:8; 21:23; 31:3
**specific** [5] - 12:13; 23:8; 26:20; 27:9
**specifically** [4] - 10:12; 13:10; 14:9; 20:18
**specificity** [1] - 13:8
**speed** [1] - 16:18
**spending** [1] - 25:17
**sponte** [1] - 9:25
**stand** [1] - 33:13
**standing** [2] - 14:21; 22:7
**stands** [1] - 31:16
**state** [2] - 12:3; 23:11
**STATES** [3] - 1:1, 7, 11
**States** [2] - 3:5, 13
**status** [5] - 6:7; 7:8, 10; 9:2; 11:1
**step** [1] - 24:7
**still** [8] - 4:7, 22; 7:14; 12:22; 16:17; 17:6; 19:10; 32:25
**Street** [2] - 2:8, 15
**stressing** [1] - 4:17
**Strzok** [9] - 12:18, 23; 13:21; 14:16; 19:12; 21:1, 17; 32:8
**sua** [1] - 9:24
**subject** [1] - 28:20
**submit** [2] - 25:19; 27:1
**submits** [2] - 19:25; 22:23
**submitted** [1] - 5:15
**submitting** [1] - 15:3
**subsequently** [1] - 10:1
**substantial** [2] - 12:10; 28:10
**substantially** [2] - 10:3; 13:22
**substantive** [1] - 14:6
**sufficiency** [1] - 13:7
**suggested** [2] - 6:4; 7:9
**Suite** [3] - 1:15, 20; 2:15
**SULLIVAN** [1] - 1:10
**sunshine** [6] - 5:24; 6:2, 5; 8:22; 9:1; 30:8
**Superior** [1] - 24:9
**supplemental** [1] - 13:23
**support** [1] - 15:25
**suppose** [1] - 26:11
**Supreme** [1] - 24:8

**T**

**table** [3] - 3:14, 23, 25
**tailored** [2] - 24:6, 13
**talks** [1] - 22:22
**tasks** [1] - 27:10
**team** [1] - 17:9
**terms** [13] - 11:1, 14, 18; 20:10; 22:2, 18; 23:4, 21, 24; 25:4, 6, 20; 28:12
**territory** [1] - 29:2
**test** [1] - 24:8
**themselves** [3] - 20:3; 25:8; 33:3
**therefore** [4] - 11:6; 20:22; 22:9; 28:20

**thinking** [1] - 21:21
**third** [3] - 5:20; 12:23, 25
**thorough** [1] - 11:8
**three** [18] - 6:7, 14; 7:2; 8:12, 14, 17; 11:23; 12:4; 13:18; 17:3; 18:14, 17-18; 19:13; 31:16, 22; 32:9, 12
**today** [11] - 3:18; 5:6; 8:3; 18:4; 28:14, 19; 29:17; 30:10, 17, 23; 33:10
**today's** [2] - 7:1, 6
**token** [1] - 7:19
**took** [2] - 11:8; 22:7
**top** [1] - 22:4
**topic** [1] - 22:16
**totality** [1] - 5:18
**totally** [2] - 5:20; 10:2
**totem** [1] - 27:8
**track** [1] - 33:8
**Trail** [1] - 2:19
**TRANSCRIPT** [1] - 1:10
**transcript** [3] - 2:25; 9:20; 33:18
**transcription** [1] - 2:25
**transcripts** [1] - 9:15
**TREMAINE** [2] - 1:14, 19
**Tremaine** [1] - 3:9
**true** [1] - 29:3
**trying** [1] - 13:14
**Turtle** [1] - 2:12
**twice** [1] - 15:15
**two** [9] - 7:24; 13:5; 14:14, 18, 24; 21:2; 24:8; 30:22; 32:10
**two-part** [1] - 24:8
**TX** [1] - 2:12
**type** [1] - 25:23
**typically** [2] - 21:14; 29:12

# U

**U.S** [7] - 2:2, 6-7, 23; 19:18; 24:10
**ultimately** [1] - 22:14
**uncharted** [2] - 29:2, 21
**uncover** [2] - 5:3; 27:7
**under** [10] - 10:2; 15:20; 16:2; 21:3; 22:19; 23:14; 24:7; 32:23; 33:11
**underlying** [2] - 8:5; 23:8
**understandable** [1] - 6:22
**undertaken** [1] - 26:24
**undertook** [1] - 11:21
**unfortunate** [1] - 33:3
**unfortunately** [1] - 33:2
**unique** [4] - 21:8, 10, 22, 25
**United** [2] - 3:5, 13
**UNITED** [3] - 1:1, 7, 11
**unquote** [1] - 24:7
**unredact** [1] - 16:5
**unredacted** [6] - 12:10, 13, 21; 13:23; 14:3, 5
**unredacting** [1] - 31:6
**unredaction** [1] - 14:1
**unrelated** [1] - 5:20

**unseal** [2] - 10:1; 12:7
**unsealed** [1] - 11:8
**unsealing** [1] - 5:22
**unusual** [1] - 25:19
**up** [5] - 5:17; 16:17; 17:7, 12; 26:10

# V

**VA** [1] - 2:16
**valid** [1] - 29:15
**value** [4] - 24:17, 22, 25; 25:15
**values** [2] - 24:7, 12
**VAN** [19] - 3:12; 10:25; 11:18; 12:3; 14:8, 12; 18:10, 12, 17, 25; 21:7; 23:16, 21; 24:15, 19; 31:10, 19; 32:5, 15
**Van** [4] - 2:2; 3:12; 26:22; 27:14
**various** [4] - 10:1; 19:3; 27:16; 31:7
**version** [1] - 27:23
**versus** [4] - 3:5; 23:12; 24:9; 25:10
**vice** [2] - 3:19, 23
**views** [1] - 4:4
**Villages** [1] - 2:19
**Virginia** [1] - 23:11
**voluminous** [1] - 17:2

# W

**Wallace** [4] - 2:22; 33:18, 20
**warrant** [1] - 6:5
**WASHINGTON** [1] - 1:4
**Washington** [20] - 1:7, 15, 20; 2:4, 9, 23; 3:4, 9; 8:20; 9:6, 10; 12:7; 14:13; 18:13; 19:16; 21:8; 23:12; 24:22; 31:14; 32:5
**waters** [1] - 29:21
**wedded** [1] - 8:15
**week** [3] - 6:10, 15; 7:24
**weeks** [3] - 7:13, 24; 10:15
**weigh** [2] - 8:1; 9:3
**weighed** [1] - 22:12
**welcome** [2] - 3:23; 4:1
**well-established** [1] - 26:9
**whichever** [2] - 6:16; 8:15
**whole** [1] - 26:19
**William** [2] - 2:18; 3:19
**WILLIAM** [1] - 2:18
**workers** [1] - 27:12
**works** [1] - 22:3
**worry** [1] - 28:7
**worth** [4] - 11:20, 25; 20:17; 25:17
**WRIGHT** [2] - 1:14, 19
**Wright** [1] - 3:9
**writing** [1] - 17:21
**written** [5] - 4:5; 14:4; 20:15; 21:16; 33:7
**wwh@hodeslaw.com** [1] - 2:21

# Y

**year** [1] - 9:15
**years** [1] - 33:7
**yourself** [1] - 31:18
**yourselves** [1] - 3:7